















JAH   9/24/01   11:36
3:00-CV-02054   GULF UNDERWRITERS V. BUILDERS FINANCIAL
*59*
*AMDCNT.*

1  RICHARD E. MCCARTHY  [State Bar 106050]
   WILLIAM MCCURINE [State Bar 66773]
2  DARCI L. DUBREUIL [State Bar 197112]
   SOLOMON WARD SEIDENWURM & SMITH, LLP
3  401 B Street, Suite 1200
   San Diego, CA 92101
4  Telephone:  (619) 231-0303
   Facsimile:  (619) 231-4755



5  Attorneys for Defendants and Counter-Claimants
   Builders Financial Group, Inc.; Bruce A. Olster; and
6  Madeline Olster; Defendant Joseph E. Telese; and
   Counter-Claimants Benjamin A. Alev; Draper Plaza,
7  LLC, AMKA Holdings, LLC; BAM Investment, Inc.,
   ABA, LLC; Benjamin A. Alev, Trustee of the KTB
8  Irrevocable Trust; ALKA Enterprises, LLC; Steele
   Canyon 2,  LLC; Steele Canyon 14, LLC; Steele
9  Canyon 33, LLC; Dove Hollow, LLC; 2903 Wishbone
   Way, LLC; and P.P. B., LLC

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14  GULF UNDERWRITERS INSURANCE          Case No.: 00 CV 2054 IEG (LAB)
    COMPANY, a Missouri corporation,
                                         **SECOND AMENDED COUNTER-CLAIM**
15              Plaintiff,
                                         [Plaintiffs Demand Jury Trial]
16  v.

17  BUILDERS FINANCIAL GROUP, a
    Delaware corporation; BRUCE A. OLSTER,
18  an individual; MADELINE S. OLSTER, an
    individual; JOSEPH E. TELESE, an
19  individual; and DOES 1 through 20
    inclusive,
20
                Defendants.
21

22  BUILDERS FINANCIAL GROUP, INC., a
    Delaware corporation; BRUCE A. OLSTER,
23  an individual; MADELINE S. OLSTER, an
    individual; BENJAMIN A. ALEV, an
24  individual; DRAPER PLAZA, LLC, a Nevada
    limited liability company; AMKA
25  HOLDINGS, LLC, a Nevada limited liability
    company; BAM INVESTMENT, INC., an
26  Arizona corporation; ABA, LLC, a Nevada
    limited liability company; BENJAMIN A.
27  ALEV, TRUSTEE OF THE KTB
    IRREVOCABLE TRUST; ALKA ENTERPRISES,
28  LLC, an Arizona limited liability company;

P:0179081.02:07495.005

59

STEELE CANYON 2, LLC, an Arizona limited liability company; STEELE CANYON 14, LLC, an Arizona limited liability company; STEELE CANYON 33, LLC, an Arizona limited liability company; DOVE HOLLOW, LLC, an Arizona limited liability company; 2903 WISHBONE WAY, LLC, an Arizona limited liability company; and P.P.B., LLC, an Arizona limited liability company,

Counter-Claimants,

v.

GULF UNDERWRITERS INSURANCE COMPANY, a Missouri corporation; and ROES 1 through 200, inclusive,

Counter-Defendant.

Counter-Claimants BUILDERS FINANCIAL GROUP, INC., BRUCE A. OLSTER, MADELINE S. OLSTER, BENJAMIN A. ALEV, DRAPER PLAZA, LLC, AMKA HOLDINGS, LLC, ABA, LLC, BENJAMIN A. ALEV, TRUSTEE OF THE KTB IRREVOCABLE TRUST, BAM INVESTMENT, INC., ALKA ENTERPRISES, LLC, STEELE CANYON 2, LLC, STEELE CANYON 14, LLC, STEELE CANYON 33, LLC, DOVE HOLLOW, LLC, 2903 WISHBONE WAY, LLC and P.P.B., LLC allege as follows:

I.

## JURISDICTION

1.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1367(a).

II.

## VENUE

2.      Venue is proper in this judicial district under 28 U.S.C. § 1391(a).

III.

## THE PARTIES

3.      Counter-Claimant BUILDERS FINANCIAL GROUP, INCORPORATED was and is, at all times material to this action, a Delaware corporation with its principal place of business in Florida, and is the named insured under a policy of insurance issued by

Counter-Defendant Gulf Underwriters Insurance Company, as more particularly described below.

4.      Counter-Claimant BRUCE A. OLSTER was and is, at all times material to this action, an individual residing in the State of Florida, and an officer of Builders Financial Group.

5.      Counter-Claimant MADELINE S. OLSTER was and is, at all times material to this action, an individual residing in the State of Florida, and an owner, officer and director of Builders Financial Group.

6.      Counter-Claimant BENJAMIN A. ALEV ("Alev") is an individual residing in the State of Arizona.  Alev is the trustee of Counter-Claimant the KTB IRREVOCABLE TRUST.  The KTB IRREVOCABLE TRUST ("KTB") is the sole member of Counter-Claimant ABA, LLC,  a limited liability company.  ABA, LLC ("ABA") is a limited liability company organized and existing under the laws of the State of Nevada, having its principal place of business in Carson City, Nevada and is authorized to do business in California.

7.      Counter-Claimant P.P.B., LLC ("PPB") is a limited liability company organized and existing under the laws of the State of Arizona, having its principal place of business in Tucson, Arizona.

8.      Counter-Claimant DRAPER PLAZA, LLC ("Draper") is a limited liability company organized and existing under the laws of the State of Nevada, having its principal place of business in Carson City, Nevada and is authorized to do business in California.

9.      Counter-Claimant BAM INVESTMENT, INC. ("BAM") is a corporation organized and existing under the laws of the State of Arizona, having its principal place of business in Tucson, Arizona and is authorized to do business in California.

10.     Counter-Claimant ALKA ENTERPRISES, LLC ("ALKA") is a limited liability company organized and existing under the laws of the State of Arizona, having its principal place of business in Tucson, Arizona and is authorized to do business in California.

11.     Counter-Claimant AMKA HOLDINGS, LLC ("AMKA") is a limited liability company organized and existing under the laws of the State of Nevada.

1    12.    Counter-Claimant 2903 WISHBONE WAY, LLC ("Wishbone") is a limited

2 liability company organized and existing under the laws of the State of Arizona, having its

3 principal place of business in Tucson, Arizona and is authorized to do business in

4 California.

5    13.    Counter-Claimant STEELE CANYON 2, LLC ("Steele 2") is a limited liability

6 company organized and existing under the laws of the State of Arizona, having its principal

7 place of business in Tucson, Arizona and is authorized to do business in California.

8    14.    Counter-Claimant STEELE CANYON 14, LLC ("Steele 14") is a limited liability

9 company organized and existing under the laws of the State of Arizona, having its principal

10 place of business in Tucson, Arizona and is authorized to do business in California.

11    15.    Counter-Claimant STEELE CANYON 33, LLC ("Steele 33") is a limited liability

12 company organized and existing under the laws of the State of Arizona, having its principal

13 place of business in Tucson, Arizona and is authorized to do business in California.

14    16.    Counter-Claimant DOVE HOLLOW, LLC ("Dove") is a limited liability

15 company organized and existing under the laws of the State of Arizona, having its principal

16 place of business in Tucson, Arizona and is authorized to do business in California.  Alev,

17 Draper, BAM, ABA, ALKA, AMKA, Wishbone, Steele 2, Steele 14, Steele 33, PPB, KTB and

18 Dove are collectively referred to herein as "Alev Counter-Claimants."

19    17.    Based upon information and belief, Counter-Defendant Gulf Underwriters

20 Insurance Company ("Gulf") was and is, at all times material to this action, a Missouri

21 corporation with its principal place of business in New York, and is and has been

22 conducting business in California.

23                                    **IV.**

24                **ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

25    18.    Builders Financial Group is engaged in the marketing, origination,

26 processing and servicing of construction loans to developers of single family homes.

27 Builders Financial Group acted by and through its officers, including Bruce Olster and

28 Madeline Olster.

A. **The Insurance Policy**

19.     At all times relevant hereto, Builders Financial Group, Bruce Olster and Madeline Olster were insured by a Specialty Errors and Omissions Liability Insurance Policy, number GU0406235 (the "Policy"), issued by Gulf.  Builders Financial Group is the named insured, and Bruce Olster and Madeline Olster are insured by virtue of their status as officers and/or directors of Builders Financial Group.

20.     The Policy provides coverage on a claims-made basis, and was in effect for the period of September 29, 1998 to September 29, 1999.  A copy of the Policy is attached as Exhibit "B" to Gulf's Complaint and is incorporated herein by reference.

21.     The Policy provides coverage for wrongful acts as defined therein. The insuring agreement provides:

> **We** will pay on **Your** behalf those sums in excess of the **Deductible** and within the applicable Limit of Insurance . . . that **You** become legally obligated to pay as **Damages** or **Claims Expenses** because of **Claims** as a result of a **Wrongful Act** in performing **Insured Services** for others.

22.     The term "wrongful act" is defined in relevant part as "a negligent act, error or omission."  The term "insured services" means "mortgage banking operations consisting of loan origination, processing, closing, accounting, warehousing, marketing and servicing."

23.     Builders Financial Group paid all premiums due under the Policy and performed all obligations and conditions required on its part to keep the Policy in full force and effect.

B. **The Underlying Lawsuits**

24.     In the summer of 1999, two separate lawsuits were filed against Builders Financial Group, Bruce Olster and Madeline Olster (hereinafter collectively referred to as "BFG").

25.     On July 23, 1999, customers of BFG filed a Complaint against BFG in an action captioned <u>Benjamin A. Alev, et al. v. Apollo Funding Corp., et al.</u> in the United States District Court for the Southern District of California, Case No. 99CV1527B(LAB)

1   (the "Federal Action").  This Complaint was amended on two occasions: November 18,

2   1999, and May 16, 2000.  A copy of the Second Amended Complaint in the Federal

3   Action is attached hereto as Exhibit "A."

4        26.   Thereafter in a different action, captioned <u>Apollo Funding Corp. v.</u>

5   <u>Benjamin A. Alev, et al.</u> in the San Diego Superior Court, Case No. 732437 (the "State

6   Action"), Apollo Funding Corporation filed a Complaint against customers of BFG.  On

7   August 18, 1999, those customers filed a Cross-Complaint against BFG in that same

8   action.  The Cross-Complaint was amended on two occasions: November 1, 1999, and

9   May 16, 2000.  A copy of the Second Amended Cross-Complaint is attached hereto as

10   Exhibit "B."  Alev, ABA, KTB, PPB, Draper, BAM, ALKA, Wishbone, Steele 2, Steele 14,

11   Steele 33, and Dove were the Cross-Complainants in the State Action.

12        27.   The State and the Federal Actions arise out of the same transactions and

13   contain virtually identical allegations.

14        28.   The State and Federal Actions allege that between 1996 and 1998, BFG

15   made a series of loans to Benjamin Alev and his companies, for construction projects in

16   Arizona and California. The complaints allege, among other things, that in connection

17   with these loans, BFG made negligent misrepresentations concerning the terms of the

18   loans, extensions of the loans, buy back provisions, and BFG's license to act as a

19   mortgage broker in Arizona.

20        29.   Before the commencement of trial, Cross-Complainants in the State Action

21   sought and were granted leave to amend their Cross-Complaint to conform to proof to

22   allege against BFG a cause of action for negligence arising out of BFG's conduct in

23   servicing Cross-Complainants' loans.

24        30.   The allegations made in the State and Federal Actions constitute allegations

25   of "wrongful acts" as defined by the Gulf insurance policy.

26        31.   BFG tendered defense and indemnity of the State and Federal Actions to

27   Gulf.

28

32.     After a delay of more than 6 months, Gulf accepted defense of the State and Federal Actions under a reservation of rights, and agreed to pay defense costs incurred by BFG's independent counsel.  To date, Gulf has failed to pay any defense costs.

33.     On the same day that it agreed to defend BFG under the Policy, Gulf issued a Notice of Rescission of the Policy.  The purported rescission is based on alleged material misrepresentations in BFG's application for insurance.  BFG denies that it made any material misrepresentations on its application.

34.     Only one day after accepting defense of the State and Federal Actions, Gulf filed the instant lawsuit seeking rescission, return of benefits received under the Policy, and a declaration that it has no duty to defend or indemnify BFG in the State and Federal Actions.

35.     Prior to commencement of trial, Cross-Complainants, including the Alev Counter-Claimants, made an offer to Gulf within Policy limits, in complete settlement of their claims against BFG.  Gulf rejected the offer and made Cross-Complainants a counter-offer in complete settlement of their claims against BFG, but that counter-offer was inadequate.

36.     On or about March 7, 2001, BFG in writing and for a valuable consideration assigned to the Alev Counter-Claimants all BFG's assignable rights, title and interest in and to the causes of action herein alleged by the Alev Counter-Claimants against Gulf.  A true and correct copy of the assignment is attached hereto as Exhibit "C."

37.     On or about March 13, 2001, the State Action proceeded to trial on Cross-Complainants' negligence claim.  At the conclusion of the trial, the Court in the State Action found in favor of Cross-Complainants and against BFG and, further, awarded Cross-Complainants damages in the amount of $20,241,012.00.  Judgment in the State Action was entered on May 1, 2001.  A copy of the judgment is attached hereto as Exhibit "D."

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

38.     Counter-Claimants incorporate by reference paragraphs 1 through 37 above as though fully set forth herein.

39.     The Policy provides coverage for negligent acts, errors or omissions committed by BFG, as alleged above.

40.     The Second Amended Cross-Complaint in the State Action and the Second Amended Complaint in the Federal Action both assert damage arising out of BFG's alleged negligent misrepresentations in the performance of BFG's duties.  Further, as alleged above, Cross-Complainants in the State Action sought and were granted leave to amend their Cross-Complaint to conform to proof to allege against BFG a cause of action for negligence arising out of BFG's conduct in servicing Cross-Complainants' loans. These allegations constitute "wrongful acts" within the meaning of the Policy, and trigger Gulf's duty to defend and indemnify BFG in both the State and Federal Actions.

41.     To date, Gulf has failed or refused to pay any defense costs incurred in defending the State and Federal Actions.

42.     Gulf has breached its contractual duty under the Policy by failing to provide benefits due thereunder, including but not limited to, failing to pay defense costs incurred by BFG in the State and Federal Actions, failing to settle the State and Federal Actions and failing to pay any portion of the judgment against BFG in the State Action.

43.     BFG has performed all obligations, covenants and conditions of the Policy required of it, except those obligations, covenants and conditions for which its performance was excused.

44.     As a legal result of Gulf's breach of contract as herein alleged, Counter-Claimants have suffered damages in an amount in excess of the minimum jurisdictional limits of this court, to be proven at the time of trial.

## SECOND CLAIM FOR RELIEF

### (Breach of The Covenant of Good Faith and Fair Dealing)

45.    Counter-Claimants incorporate by reference paragraphs 1 through 34 above as though fully set forth herein.

46.    In response to BFG's tender of the State and Federal Actions, among other duties, Gulf had a duty to: (a) conduct a prompt investigation of the claim; (b) affirm or deny coverage within a reasonable time; (c) promptly pay benefits due under the Policy; (d) attempt in good faith to effectuate a prompt, fair and equitable settlement of the claims; (e) settle claims promptly under one portion of the Policy, without attempting to influence settlement under other portions of the Policy; (f) respond to all communications from BFG promptly; (g) accept reasonable settlement offers within Policy limits where there was a substantial likelihood of a recovery in excess of Policy limits; and (h) engage in or refrain from engaging in additional acts to be proven at the time of trial.

47.    After BFG submitted its claim for benefits under the Policy with respect to the State and Federal Actions, Gulf breached its duty of good faith and fair dealing owed in many respects, including but not limited to, the following:

a.    Willfully and in bad faith failing to promptly investigate coverage for these claims;

b.    Willfully and in bad faith failing to affirm or deny coverage in a timely manner.  Specifically, BFG tendered defense and indemnity of the State Action to Gulf on March 29, 2000, and tendered defense and indemnity of the Federal Action to Gulf at that same time or, in any event, no later than April 5, 2000.  More than six months passed without any acceptance or denial of coverage from Gulf.  It was not until October 12, 2000, that Gulf finally informed BFG of its coverage determination, and accepted coverage under a reservation of rights;

c.   Willfully and in bad faith failing to pay benefits due under the Policy, despite the fact that Gulf accepted the defense of those actions under a reservation of rights, and expressly agreed to pay for defense costs;

d.   Willfully and in bad faith failing to effectuate a prompt, fair and equitable settlement of the claims;

e.   Willfully and in bad faith failing to settle claims promptly under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.  Specifically, Gulf conditioned settlement of the State and Federal claims on BFG's agreement to rescind the policy;

f.   Willfully and in bad faith failing to promptly respond to all communications from BFG;

g.   Upon information and belief, threatening BFG and BFG's prior counsel of record with Rule 11 sanctions merely for the filing of BFG's original Counter-Claim;

h.   Willfully and in bad faith failing to settle the State and Federal Actions by accepting Cross-Complainants' settlement offer within Policy limits in the State Action;

i.   Willfully and in bad faith engaging in other wrongful and illegal acts and omissions to be proven at the time of trial.  For example, throughout the entire six months between BFG's tender and Gulf's coverage decision, Gulf lead BFG to believe that it would accept coverage.  Yet on the very same day that Gulf finally accepted coverage under a reservation of rights, it also sent a Notice of Rescission of the policy; and,

j.   Willfully and in bad faith delaying, refusing and failing to pay the judgment rendered against BFG.

48.     Counter-Claimants are informed and believe and thereon allege that the conduct of Gulf violates statutory duties under governing state law, as well as the covenant of good faith and fair dealing implied in every insurance contract.

49.     BFG has incurred attorney and expert fees and costs in defending itself against the State and Federal Actions.

50.     As a proximate result of Gulf's breaches of the implied covenant of good faith and fair dealing, and violations of statutory duties as set forth above, Counter-Claimants have suffered damages in an amount in excess of the minimum jurisdictional limits of this court and to be proven at the time of trial.

51.     As a further proximate result of Gulf's breaches of the implied covenant of good faith and fair dealing, and violations of statutory duties, BFG been forced to retain counsel of record and has incurred attorney fees to recover the benefits due under the Policy.

52.     Counter-Claimants are informed and believe and thereon allege that the misconduct of Gulf was done with a conscious disregard of BFG's rights, and with the intent to vex, injure or annoy BFG, such as to constitute oppression, fraud, malice, and despicable conduct under California Civil Code section 3294, entitling Counter-Claimants to punitive damages in an amount appropriate to punish and set an example of Gulf.

### THIRD CLAIM FOR RELIEF

**(Breach of Contract, Refusal to Pay Judgment - Insurance Code Section 11580)**

53.     Counter-Claimants incorporate by reference paragraphs 1 through 42 above as though fully set forth herein.

54.     The Policy, which is incorporated herein by this reference, provides:  "A person or organization may sue Us to recover on 'an agreed settlement' or on a final judgment against You obtained after an actual trial; but We will not be liable for Damages and Claim Expenses that are not payable under the provisions of the insurance or that are in excess of the applicable Limit of Insurance."

55.     After entry of the judgment against BFG, Gulf failed and refused to pay the judgment recovered by the Alev Counter-Claimants and continue to fail and refuse to pay the judgment or any portion of it, and no portion of the judgment has been paid by anyone else.

56.     As a legal result of Gulf's breach as herein alleged, Counter-Claimants have suffered damages in an amount in excess of the minimum jurisdictional limits of this court, to be proven at the time of trial.

WHEREFORE, Counter-Claimants pray for a judgment against Counter-Defendant as follows:

**For the First Claim For Relief:**

1.     For damages according to proof at the time of trial;

2.     For pre-judgment interest at the legal rate;

3.     For costs of suit herein incurred; and

4.     For such other and further relief as the Court may deem just and proper.

**For the Second Claim For Relief:**

1.     For damages according to proof at the time of trial;

2.     For attorney fees pursuant to Brandt v. Superior Court (1985) 37 Cal.3d 813;

3.     For punitive and exemplary damages, in an amount to be proven at trial;

4.     For pre-judgment interest at the legal rate;

5.     For costs of suit incurred herein; and

6.     For such other and further relief as the court deems just and proper.

**For the Third Claim For Relief:**

1.     For damages according to proof at the time of trial;

2.     For pre-judgment interest at the legal rate;

1    3.    For costs of suit herein incurred; and

2    4.    For such other and further relief as the Court may deem just and proper.

3    DATED: September ___, 2001    SOLOMON WARD SEIDENWURM & SMITH, LLP

4

5    By_____
       RICHARD E. MCCARTHY
6      WILLIAM MCCURINE, JR.
       DARCI L. DUBREUIL
7      Attorneys for Defendants and Counter-Claimants
       Builders Financial Group, Inc.; Bruce A. Olster;
8      and Madeline Olster; Defendant Joseph E. Telese;
       and Counter-Claimants Benjamin A. Alev; Draper
9      Plaza, LLC; AMKA Holdings, LLC; BAM
       Investment, Inc.; ABA, LLC; Benjamin A. Alev,
10     Trustee of the KTB Irrevocable Trust; ALKA
       Enterprises, LLC; Steele Canyon 2,  LLC; Steele
11     Canyon 14, LLC; Steele Canyon 33, LLC; Dove
       Hollow, LLC; 2903 Wishbone Way, LLC; and
12     P.P.B., LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

P:0179081.02:07495.005                    13                    00 CV 2054 IEG (LAB

1

## DEMAND FOR JURY TRIAL

2    Counter-Claimants hereby demand a jury trial as provided by Rule 38(a) of the

3    Federal Rules of Civil Procedure.

4    DATED: September _10_, 2001      SOLOMON WARD SEIDENWURM & SMITH, LLP

5

6      By _____

7      RICHARD E. MCCARTHY
       WILLIAM MCCURINE, JR.

8      DARCI L. DUBREUIL
       Attorneys for Defendants and Counter-Claimants

9      Builders Financial Group, Inc.; Bruce A. Olster;
       and Madeline Olster; Defendant Joseph E. Telese;

10     and Counter-Claimants Benjamin A. Alev; Draper
       Plaza, LLC, AMKA Holdings, LLC; BAM

11     Investment, Inc., ABA, LLC; Benjamin A. Alev,
       Trustee of the KTB Irrevocable Trust; ALKA

12     Enterprises, LLC; Steele Canyon 2, LLC; Steele
       Canyon 14, LLC; Steele Canyon 33, LLC; Dove

13     Hollow, LLC; 2903 Wishbone Way, LLC; and
       P.P.B., LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RICHARD E. MCCARTHY  [State Bar 106050]
WILLIAM MCCURINE [State Bar 66773]
KARL A. SANDOVAL [State Bar 170190]
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, CA 92101
Telephone:  (619) 231-0303
Facsimile:  (619) 231-4755

Attorneys for Defendants and Counter-Claimants
Builders Financial Group, Bruce A. Olster and
Madeline Olster, Defendant Joseph E. Telese, and
Counter-Claimants AMKA Holdings, LLC and ABA,
LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GULF UNDERWRITERS INSURANCE COMPANY, a Missouri corporation, | Case No.: 00 CV 2054 IEG (LAB) |
| Plaintiff, | **FIRST AMENDED COUNTER-CLAIM** |
| v. | [Plaintiffs Demand Jury] |
| BUILDERS FINANCIAL GROUP, a Delaware corporation; BRUCE A. OLSTER, an individual; MADELINE S. OLSTER, an individual; JOSEPH E. TELESE, an individual; and DOES 1 through 20 inclusive, | |
| Defendants. | |
| BUILDERS FINANCIAL GROUP, a Delaware corporation; BRUCE A. OLSTER, an individual; MADELINE S. OLSTER, an individual; AMKA HOLDINGS, LLC, a Nevada limited liability company; and ABA, LLC, a Nevada limited liability company, | |
| Counter-Claimants, | |
| v. | |
| GULF UNDERWRITERS INSURANCE COMPANY, a Missouri corporation, | |
| Counter-Defendant. | |

P:0173507.02:07495.005  29-May-01

Counter-Claimants BUILDERS FINANCIAL GROUP, BRUCE A. OLSTER, MADELINE S. OLSTER, AMKA HOLDINGS, LLC and ABA, LLC allege as follows:

## I.

### JURISDICTION

1.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1367(a).

## II.

### VENUE

2.      Venue is proper in this judicial district under 28 U.S.C. §1391(a).

## III.

### THE PARTIES

3.      Counter-Claimant Builders Financial Group was and is, at all times material to this action, a Delaware corporation with its principal place of business in Florida, and is the named insured under a policy of insurance issued by Counter-Defendant Gulf Underwriters Insurance Company, as more particularly described below.

4.      Counter-Claimant Bruce A. Olster was and is, at all times material to this action, an individual residing in the State of Florida, and an officer of Builders Financial Group.

5.      Counter-Claimant Madeline S. Olster was and is, at all times material to this action, an individual residing in the State of Florida, and an owner, officer and director of Builders Financial Group.

6.      Counter-Claimants AMKA Holdings, LLC and ABA, LLC (hereinafter sometimes collectively referred to as the "Alev Counter-Claimants") are and were, at all times material to this action, Nevada limited liability companies.

7.      Based upon information and belief, Counter-Defendant Gulf Underwriters Insurance Company ("Gulf") was and is, at all times material to this action, a Missouri corporation with its principal place of business in New York, and is and has been conducting business in California.

## IV.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

8.      Builders Financial Group is engaged in the marketing, origination, processing and servicing of construction loans to developers of single family homes. Builders Financial Group acted by and through its officers, including Bruce Olster and Madeline Olster.

### A.      The Insurance Policy

9.      At all times relevant hereto, Builders Financial Group, Bruce Olster and Madeline Olster were insured by a Specialty Errors and Omissions Liability Insurance Policy, number GU0406235 (the "Policy"), issued by Gulf.  Builders Financial Group is the named insured, and Bruce Olster and Madeline Olster are insured by virtue of their status as officers and/or directors of Builders Financial Group.

10.     The Policy provides coverage on a claims-made basis, and was in effect for the period of September 29, 1998 to September 29, 1999.  A copy of the Policy is attached as Exhibit "B" to Gulf's Complaint and is incorporated herein by reference.

11.     The Policy provides coverage for wrongful acts as defined therein. The insuring agreement provides:

> **We** will pay on **Your** behalf those sums in excess of the **Deductible** and within the applicable Limit of Insurance . . . that **You** become legally obligated to pay as **Damages** or **Claims Expenses** because of **Claims** as a result of a **Wrongful Act** in performing **Insured Services** for others.

12.     The term "wrongful act" is defined in relevant part as "a negligent act, error or omission."  The term "insured services" means "mortgage banking operations consisting of loan origination, processing, closing, accounting, warehousing, marketing and servicing."

13.     Builders Financial Group paid all premiums due under the Policy and performed all obligations and conditions required on its part to keep the Policy in full force and effect.

////

**B.     The Underlying Lawsuits**

14.     In the summer of 1999, two separate lawsuits were filed against Builders Financial Group, Bruce Olster and Madeline Olster (hereinafter collectively referred to as "BFG").

15.     On July 23, 1999, customers of BFG filed a Complaint against BFG in an action captioned <u>Benjamin A. Alev, et al. v. Apollo Funding Corp., et al.</u> in the United States District Court for the Southern District of California, Case No. 99CV1527B(LAB) (the "Federal Action").  This Complaint was amended on two occasions: November 18, 1999, and May 16, 2000.  A copy of the Second Amended Complaint in the Federal Action is attached hereto as Exhibit "A."

16.     Thereafter in a different action, captioned <u>Apollo Funding Corp. v. Benjamin A. Alev, et al.</u> in the San Diego Superior Court, Case No. 732437 (the "State Action"), Apollo Funding Corporation filed a Complaint against customers of BFG.  On August 18, 1999, those customers filed a Cross-Complaint against BFG in that same action.  The Cross-Complaint was amended on two occasions: November 1, 1999, and May 16, 2000.  A copy of the Second Amended Cross-Complaint is attached hereto as Exhibit "B."

17.     The State and the Federal Actions arise out of the same transactions and contain virtually identical allegations.

18.     The State and Federal Actions allege that between 1996 and 1998, BFG made a series of loans to Benjamin Alev and his companies, for construction projects in Arizona and California. The complaints allege, among other things, that in connection with these loans, BFG made negligent misrepresentations concerning the terms of the loans, extensions of the loans, buy back provisions, and BFG's license to act as a mortgage broker in Arizona.

////

////

19.     Before the commencement of trial, cross-complainants in the State Action sought and were granted leave to amend their Cross-Complaint to conform to proof to allege against BFG a cause of action for negligence arising out of BFG's conduct in servicing cross-complainants' loans.

20.     The allegations made in the State and Federal Actions constitute allegations of "wrongful acts" as defined by the Gulf insurance policy.

21.     BFG tendered defense and indemnity of the State and Federal Actions to Gulf.

22.     After a delay of more than 6 months, Gulf accepted defense of the State and Federal Actions under a reservation of rights, and agreed to pay defense costs incurred by BFG's independent counsel.  To date, Gulf has failed to pay any defense costs.

23.     On the same day that it agreed to defend BFG under the Policy, Gulf issued a Notice of Rescission of the Policy.  The purported rescission is based on alleged material misrepresentations in BFG's application for insurance.  BFG denies that it made any material misrepresentations on its application.

24.     Only one day after accepting defense of the State and Federal Actions, Gulf filed the instant lawsuit seeking rescission, return of benefits received under the Policy, and a declaration that it has no duty to defend or indemnify BFG in the State and Federal Actions.

25.     Prior to commencement of trial, cross-complainants, including the Alev Counter-Claimants, made an offer to Gulf within Policy limits, in complete settlement of their claims against BFG.  Gulf rejected the offer and made cross-complainants a counter-offer in complete settlement of their claims against BFG, but that counter-offer was inadequate.

26.     On or about March 7, 2001, BFG in writing and for a valuable consideration assigned to the Alev Counter-Claimants all BFG's assignable rights, title and interest in and to the causes of action herein alleged by the Alev Counter-Claimants against Gulf.  A true and correct copy of the assignment is attached hereto as Exhibit "C."

27.     On or about March 13, 2001, the State Action proceeded to trial on cross-complainants' negligence claim.  At the conclusion of the trial, the Court in the State Action found in favor of cross-complainants and against BFG and, further, awarded cross-complainants damages in the amount of $20,241,012.00.  Judgment in the State Action was entered on May 1, 2001.  A copy of the judgment is attached hereto as Exhibit "D."

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

28.     Counter-Claimants incorporate by reference paragraphs 1 through 27 above as though fully set forth herein.

29.     The Policy provides coverage for negligent acts, errors or omissions committed by BFG, as alleged above.

30.     The Second Amended Cross-Complaint in the State Action and the Second Amended Complaint in the Federal Action both assert damage arising out of BFG's alleged negligent misrepresentations in the performance of BFG's duties.  Further, as alleged above, cross-complainants in the State Action sought and were granted leave to amend their Cross-Complaint to conform to proof to allege against BFG a cause of action for negligence arising out of BFG's conduct in servicing cross-complainants' loans.  These allegations constitute "wrongful acts" within the meaning of the Policy, and trigger Gulf's duty to defend and indemnify BFG in both the State and Federal Actions.

31.     To date, Gulf has failed or refused to pay any defense costs incurred in defending the State and Federal Actions.

32.     Gulf has breached its contractual duty under the Policy by failing to provide benefits due thereunder, including but not limited to, failing to pay defense costs incurred by BFG in the State and Federal Actions, failing to settle the State and Federal Actions and failing to pay any portion of the judgment against BFG in the State Action.

33.     BFG has performed all obligations, covenants and conditions of the Policy required of it, except those obligations, covenants and conditions for which its performance was excused.

34.     As a legal result of Gulf's breach of contract as herein alleged, Counter-Claimants have suffered damages in an amount in excess of the minimum jurisdictional limits of this court, to be proven at the time of trial.

## SECOND CLAIM FOR RELIEF

### (Breach of The Covenant of Good Faith and Fair Dealing)

35.     Counter-Claimants incorporate by reference paragraphs 1 through 34 above as though fully set forth herein.

36.     In response to BFG's tender of the State and Federal Actions, among other duties, Gulf had a duty to: (a) conduct a prompt investigation of the claim; (b) affirm or deny coverage within a reasonable time; (c) promptly pay benefits due under the Policy; (d) attempt in good faith to effectuate a prompt, fair and equitable settlement of the claims; (e) settle claims promptly under one portion of the Policy, without attempting to influence settlement under other portions of the Policy; (f) respond to all communications from BFG promptly; (g) accept reasonable settlement offers within Policy limits where there was a substantial likelihood of a recovery in excess of Policy limits; and (h) engage in or refrain from engaging in additional acts to be proven at the time of trial.

37.     After BFG submitted its claim for benefits under the Policy with respect to the State and Federal Actions, Gulf breached its duty of good faith and fair dealing owed in many respects, including but not limited to, the following:

a.      Willfully and in bad faith failing to promptly investigate coverage for these claims;

b.      Willfully and in bad faith failing to affirm or deny coverage in a timely manner.  Specifically, BFG tendered defense and indemnity of the State Action to Gulf on March 29, 2000, and tendered defense and indemnity of the Federal Action to Gulf at that same time or, in any event, no later than April 5, 2000.  More than six months passed without any acceptance or denial of coverage from Gulf.  It was not until October 12, 2000, that Gulf finally informed BFG of its coverage determination, and accepted coverage

1    under a reservation of rights;

2    c.    Willfully and in bad faith failing to pay benefits due under the Policy,

3          despite the fact that Gulf accepted the defense of those actions under a

4          reservation of rights, and expressly agreed to pay for defense costs;

5    d.    Willfully and in bad faith failing to effectuate a prompt, fair and equitable

6          settlement of the claims;

7    e.    Willfully and in bad faith failing to settle claims promptly under one portion

8          of the insurance policy coverage in order to influence settlements under

9          other portions of the insurance policy coverage. Specifically, Gulf

10         conditioned settlement of the State and Federal claims on BFG's agreement

11         to rescind the policy;

12   f.    Willfully and in bad faith failing to promptly respond to all communications

13         from BFG;

14   g.    Upon information and belief, threatening BFG and BFG's prior counsel of

15         record with Rule 11 sanctions merely for the filing of BFG's original

16         Counter-Claim;

17   h.    Willfully and in bad faith failing to settle the State and Federal Actions by

18         accepting cross-complainants' settlement offer within Policy limits in the

19         State Action;

20   i.    Willfully and in bad faith engaging in other wrongful and illegal acts and

21         omissions to be proven at the time of trial. For example, throughout the

22         entire six months between BFG's tender and Gulf's coverage decision, Gulf

23         lead BFG to believe that it would accept coverage. Yet on the very same

24         day that Gulf finally accepted coverage under a reservation of rights, it also

25         sent a Notice of Rescission of the policy; and,

26   j.    Willfully and in bad faith delaying, refusing and failing to pay the judgment

27         rendered against BFG.

28   ////

38.    Counter-Claimants are informed and believe and thereon allege that the conduct of Gulf violates statutory duties under governing state law, as well as the covenant of good faith and fair dealing implied in every insurance contract.

39.    BFG has incurred attorney and expert fees and costs in defending itself against the State and Federal Actions.

40.    As a proximate result of Gulf's breaches of the implied covenant of good faith and fair dealing, and violations of statutory duties as set forth above, Counter-Claimants have suffered damages in an amount in excess of the minimum jurisdictional limits of this court and to be proven at the time of trial.

41.    As a further proximate result of Gulf's breaches of the implied covenant of good faith and fair dealing, and violations of statutory duties, BFG been forced to retain counsel of record and has incurred attorney fees to recover the benefits due under the Policy.

42.    Counter-Claimants are informed and believe and thereon allege that the misconduct of Gulf was done with a conscious disregard of BFG's rights, and with the intent to vex, injure or annoy BFG, such as to constitute oppression, fraud, malice, and despicable conduct under California Civil Code section 3294, entitling Counter-Claimants to punitive damages in an amount appropriate to punish and set an example of Gulf.

### THIRD CLAIM FOR RELIEF

**(Breach of Contract, Refusal to Pay Judgment - Insurance Code §11580)**

43.    Counter-Claimants incorporate by reference paragraphs 1 through 42 above as though fully set forth herein.

44.    The Policy, which is incorporated herein by this reference, provides:  "A person or organization may sue Us to recover on 'an agreed settlement' or on a final judgment against You obtained after an actual trial; but We will not be liable for Damages and Claim Expenses that are not payable under the provisions of the insurance or that are in excess of the applicable Limit of Insurance."

////

45.     After entry of the judgment against BFG, Gulf failed and refused to pay the judgment recovered by the Alev Counter-Claimants and continue to fail and refuse to pay the judgment or any portion of it, and no portion of the judgment has been paid by anyone else.

46.     As a legal result of Gulf's breach as herein alleged, Counter-Claimants have suffered damages in an amount in excess of the minimum jurisdictional limits of this court, to be proven at the time of trial.

WHEREFORE, Counter-Claimants pray for a judgment against Counter-Defendant as follows:

**For the First Claim For Relief:**

1.     For damages according to proof at the time of trial;

2.     For pre-judgment interest at the legal rate;

3.     For costs of suit herein incurred; and

4.     For such other and further relief as the Court may deem just and proper.

**For the Second Claim For Relief:**

1.     For damages according to proof at the time of trial;

2.     For attorney fees pursuant to Brandt v. Superior Court (1985) 37 Cal.3d 813;

3.     For punitive and exemplary damages, in an amount to be proven at trial;

4.     For pre-judgment interest at the legal rate;

5.     For costs of suit incurred herein; and

6.     For such other and further relief as the court deems just and proper.

////

////

**For the Third Claim For Relief:**

1.     For damages according to proof at the time of trial;

2.     For pre-judgment interest at the legal rate;

3.     For costs of suit herein incurred; and

4.     For such other and further relief as the Court may deem just and proper.

DATED: May ___, 2001          SOLOMON WARD SEIDENWURM & SMITH, LLP

By_____
    RICHARD E. MCCARTHY
    WILLIAM MCCURINE, JR.
    KARL A. SANDOVAL
    Attorneys for Defendants and Counter-Claimants
    Builders Financial Group, Bruce A. Olster,
    Madeline Olster, Defendant Joseph E. Telese, and
    Counter-Claimants AMKA Holdings, LLC and ABA,
    LLC

1

## DEMAND FOR JURY TRIAL

2      Counter-Claimants hereby demand a jury trial as provided by Rule 38(a) of the

3   Federal Rules of Civil Procedure.

4   DATED: May ___, 2001               SOLOMON WARD SEIDENWURM & SMITH, LLP

5

6                                       By_____
                                          RICHARD E. MCCARTHY
7                                         WILLIAM MCCURINE, JR.
                                          KARL A. SANDOVAL
8                                         Attorneys for Defendants and Counter-Claimants
                                          Builders Financial Group, Bruce A. Olster,
9                                         Madeline Olster, Defendant Joseph E. Telese, and
                                          Counter-Claimants AMKA Holdings, LLC and ABA,
10                                        LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1 | NORMAN L. SMITH  [State Bar 106344]
2 | RICHARD E. MCCARTHY  [State Bar 106050]
  | KARL A. SANDOVAL [State Bar 170190]
3 | SOLOMON WARD SEIDENWURM & SMITH, LLP
  | 401 B Street, Suite 1200
4 | San Diego, CA 92101
  | Telephone:  (619) 231-0303
5 | Facsimile:  (619) 231-4755

6

7 | Attorneys for Plaintiffs
  | Benjamin A. Alev, Draper Plaza, LLC, BAM
  | Investment, Inc., ABA, LLC, Benjamin A. Alev,
8 | Trustee of the KTB Irrevocable Trust, ALKA
  | Enterprises, LLC, 2903 Wishbone Way, LLC, Steele
9 | Canyon 2, LLC, Steele Canyon 14, LLC, Steele
  | Canyon 33, LLC, Dove Hollow, LLC, P.P.B., LLC

10

11 |                IN THE UNITED STATES DISTRICT COURT

12 |              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14 | BENJAMIN A. ALEV, an individual,           Case No.: 99 CV 1527B (LAB)
   | DRAPER PLAZA, LLC,  a Nevada limited
15 | liability company, BAM INVESTMENT,        SECOND AMENDED COMPLAINT
   | INC., an Arizona corporation, ABA, LLC, a
16 | Nevada limited liability company,
   | BENJAMIN A. ALEV, TRUSTEE OF THE          [Plaintiffs Demand Jury]
17 | KTB IRREVOCABLE TRUST, ALKA
   | ENTERPRISES, LLC, an Arizona limited
18 | liability company, 2903 WISHBONE
   | WAY, LLC, an Arizona limited liability
19 | company, STEELE CANYON 2, LLC, an
   | Arizona limited liability company, STEELE
20 | CANYON 14, LLC, an Arizona limited
   | liability company, STEELE CANYON 33,
21 | LLC, an Arizona limited liability company,
   | DOVE HOLLOW, LLC, an Arizona limited
22 | liability company, P.P.B., LLC, an Arizona
   | limited liability company,

23 |                  Plaintiffs,

24 | v.

25 | APOLLO FUNDING CORP., a Delaware
   | corporation, BRUCE A. OLSTER, an
26 | individual, APOLLO MORTGAGE &
   | FINANCIAL SERVICES, INC., a Florida
27 | corporation, MADELINE OLSTER, an
   | individual, JOSEPH E. TELESE, an
28 | individual, BUILDERS FINANCIAL

P:0146140.01:07495.002  9-May-00

COPY

GROUP INCORPORATED, a Delaware
corporation, NATIONAL FUND
CONTROL, LLC, a Colorado corporation,
THE JET GROUP CORP., a Delaware
corporation, INSOUTH BANK, a
Tennessee corporation, SOUTHERN
FINANCIAL, INC., a Tennessee
corporation,

        Defendants.

Plaintiffs allege as follows:

## I.

## THE PARTIES

1. Plaintiff BENJAMIN A. ALEV ("Alev") is an individual residing in the State of Arizona. Alev is the trustee of plaintiff the KTB Irrevocable Trust.   The KTB Irrevocable Trust ("KTB") is the sole member of plaintiff ABA, LLC,  a limited liability company.  ABA, LLC ("ABA") is a limited liability company organized and existing under the laws of the State of Nevada, having its principal place of business in Carson City, Nevada and is authorized to do business in California.

2. Plaintiff DRAPER PLAZA, LLC ("Draper") is a limited liability company organized and existing under the laws of the State of Nevada, having its principal place of business in Carson City, Nevada, and is authorized to do business in California.

3. Plaintiff BAM INVESTMENT, INC. ("BAM") is a corporation organized and existing under the laws of the State of Arizona, having its principal place of business in Tucson, Arizona and is authorized to do business in California.

4. Plaintiff ALKA ENTERPRISES, LLC ("ALKA") is a limited liability company organized and existing under the laws of the State of Arizona, having its principal place of business in Tucson, Arizona and is authorized to do business in California.

5. Plaintiff 2903 WISHBONE WAY, LLC ("Wishbone") is a limited liability company organized and existing under the laws of the State of Arizona, having its principal place of business in Tucson, Arizona and is authorized to do business in California.

Exhibit A
Page 2

6.  Plaintiff STEELE CANYON 2, LLC ("Steele 2") is a limited liability company organized and existing under the laws of the State of Arizona, having its principal place of business in Tucson, Arizona and is authorized to do business in California.

7.  Plaintiff STEELE CANYON 14, LLC ("Steele 14") is a limited liability company organized and existing under the laws of the State of Arizona, having its principal place of business in Tucson, Arizona and is authorized to do business in California.

8.  Plaintiff STEELE CANYON 33, LLC ("Steele 33") is a limited liability company organized and existing under the laws of the State of Arizona, having its principal place of business in Tucson, Arizona and is authorized to do business in California.

9.  Plaintiff P.P.B., LLC ("PPB") is a limited liability company organized and existing under the laws of the State of Arizona, having its principal place of business in Tucson, Arizona.

10.  Plaintiff DOVE HOLLOW, LLC ("Dove") is a limited liability company organized and existing under the laws of the State of Arizona, having its principal place of business in Tucson, Arizona and is authorized to do business in California.  Alev, Draper, BAM, ABA, ALKA, Wishbone, Steele 2, Steele 14, Steele 33, KTB, PPB and Dove are collectively referred to herein as "Plaintiffs."

11.  Plaintiffs are informed and believe, and on that basis allege, that at all times material to this action, defendant BRUCE A. OLSTER ("Olster") is, and at all times relevant was, a citizen of Florida, in Pinellas County, Florida.

12.  Plaintiffs are informed and believe, and on that basis allege, that at all times material to this action, defendant APOLLO FUNDING CORP. ("Apollo Funding") was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Florida.

13.  Plaintiffs are informed and believe, and on that basis allege, that at all times material to this action, defendant APOLLO MORTGAGE & FINANCIAL SERVICES, INC. ("Apollo Mortgage") was a corporation organized and existing under the laws of the State of

Exhibit A
Page 3

1   Florida. Plaintiffs are informed and believe, and on that basis allege, that Apollo Mortgage

2   filed a voluntary dissolution in Florida in or about May, 1999.

3       14.  Plaintiffs are informed and believe, and on that basis allege, that at all times

4   material to this action, defendant MADELINE OLSTER ("Mrs. Olster") is, and at all times

5   relevant was, a citizen of Florida, in Pinellas County, Florida.  Mrs. Olster is Olster's wife,

6   and plaintiffs are informed and believe, and on that basis allege, that she acted as the

7   officer, director and/or agent of one or more of the defendants.

8       15.  Plaintiffs are informed and believe, and on that basis allege, that at all times

9   material to this action, defendant JOSEPH E. TELESE ("Telese") is, and at all times relevant

10  was, a citizen of Florida, and held the title of president of defendant BUILDERS FINANCIAL

11  GROUP INCORPORATED.

12      16.  Plaintiffs are informed and believe, and on that basis allege, that at all times

13  material to this action, defendant BUILDERS FINANCIAL GROUP INCORPORATED

14  ("Builders Financial") was and is a corporation organized and existing under the laws of the

15  State of Florida with its principal place of business in the State of Florida.

16      17.  Plaintiffs are informed and believe, and on that basis allege, that at all times

17  material to this action, defendant NATIONAL FUND CONTROL, LLC was and is a limited

18  liability company organized and existing under the laws of the State of Colorado, with its

19  principal place of business in the State of Colorado.

20      18.  Plaintiffs are informed and believe, and on that basis allege, that at all times

21  material to this action, defendant THE JET GROUP CORP. ("The Jet Group") was and is a

22  corporation organized and existing under the laws of the State of Delaware, with its

23  principal place of business in the State of Florida.

24      19.  Plaintiffs are informed and believe, and on that basis allege, that at all times

25  material to this action, defendant INSOUTH BANK ("InSouth") was and is a corporation

26  organized and existing under the laws of the State of Tennessee, with its principal place of

27  business in the State of Tennessee.

28

P:0146140.01:07495.002  9-May-00                    3
SECOND AMENDED COMPLAINT

1    20.  Plaintiffs are informed and believe, and on that basis allege, that at all times

2    material to this action, defendant SOUTHERN FINANCIAL, INC. ("Southern Financial") was

3    and is a corporation organized and existing under the laws of the State of Tennessee, with

4    its principal place of business in the State of Tennessee.

5    21.  Plaintiffs are informed and believe, and on that basis allege, that at all times

6    material to this action, defendants and each of them, conspired among themselves and with

7    others -- including officers, employees, agents, undisclosed lenders and attorneys -- to carry

8    out the acts described below.  Plaintiffs are informed and believe, and on that basis allege,

9    that in the course and scope of such conspiracy, defendants and each of them, performed,

10   aided, encouraged, or ratified performance of the wrongful acts set out below in this

11   complaint.

12                                          II.

13                             VENUE AND JURISDICTION

14   22.  The jurisdiction of this Court over the subject matter of this action is predicated

15   on 28 U.S.C. §1332 (a)(1) in that it is a civil action between citizens of different States.  The

16   amount in controversy exceeds $75,000 exclusive of interest and costs.  Jurisdiction is also

17   predicated on 28 U.S.C. §1331 and 1337.

18   23.  Venue in this District is proper under 28 U.S.C. §1391(a) because a substantial

19   part of the events or omissions giving rise to these claims occurred in this District, and a

20   substantial part of property that is the subject of the action is located in this District.

21                                         III.

22                    FACTS COMMON TO ALL CLAIMS FOR RELIEF

23   24.  Plaintiff Alev has been involved in real estate development since approximately

24   1983.  Over the years, he developed dependable financing sources for his business.

25   25.  In or about 1996, Alev was introduced to defendant Olster.  Olster represented

26   to Alev that he was a mortgage broker with a wide network of unique financing

27   opportunities.  Olster represented that through his companies -- Builders Financial, Apollo

28

Exhibit A
Page 5

1  Mortgage, and Apollo Funding – he would assist Alev in obtaining construction loans,

2  development loans, and other loan and funding options that would be of great benefit to

3  Alev's business.  During the course of the relationship, Olster represented that he had a

4  pool of $100,000,000 to $150,000,000 of development financing at his disposal.  Olster

5  further represented that Alev would be one of only five national developers who would

6  have access to this financing pool.  In addition, Olster represented that the lenders he

7  represented, and the loan structure Olster proposed, provided a unique financing

8  arrangement through an Olster-related entity, The Jet Group.  Under such financing

9  arrangement, Olster and his lenders, through The Jet Group, would guaranty purchase of

10  the subject projects at purchase prices based upon appraisals, thereby providing plaintiffs

11  the benefit of a standby or back-up purchase commitment (the "Standby Purchase

12  Commitments") which would guaranty purchase of the properties.  For this Standby

13  Purchase Commitment, and in reliance on defendants' representations and promises,

14  plaintiffs paid significant advance fees equal to 2.5% of each loan amount to The Jet Group

15  for the issuance of its Standby Purchase Commitments to repurchase the properties at

16  appraised value if so desired by plaintiffs.

17      26.  Olster and Alev developed a relationship based upon trust, and Alev began

18  relying exclusively upon Olster and his companies and related lenders to supply the critical

19  funding for Alev's development projects.  As part of this relationship, Olster represented to

20  Alev that he was able to act as a mortgage broker to secure loans for Alev's projects in

21  Arizona and California and would assist Alev in developing properties in those states.

22      27.  Since 1996, Olster and his affiliated lenders made and/or brokered over forty

23  (40) loans for Alev's projects.  Olster and his companies were paid approximately

24  $1,000,000 in fees on these loans.

25      28.  The projects funded through these loans included projects developed in

26  Arizona, and several more in California.  Loan commitments were brokered by Olster

27  through Apollo Mortgage.  Olster provided Alev with loan commitments through Builders

28

Financial.  Olster in turn provided Alev with funding through Apollo Funding.  Plaintiffs have since discovered that other additional undisclosed lenders, including InSouth and Southern Financial, have been involved and that Apollo Funding secretly transferred certain loans to these lenders.  Such lenders acted in concert with certain of the defendants.

29.  Through these various Olster entities, Alev was able to develop several projects, and the loans were used to pay the critical construction and development costs necessary for Alev's projects to succeed and return a profit.

30.  One of Alev's projects in Arizona -- Plaza Pueblo Bonito, LLC (hereafter "P.P.B.") -- involved fifteen lots under development.  Olster brokered and provided separate loans through his companies to develop each individual lot.  By the end of 1998, it was necessary for Alev to request an extension on the P.P.B. loans.  Alev and Olster had agreed from the inception that the lots could not be completely developed within the initial short-term loan period, and it would be necessary to later extend the due dates for the loans.  As it developed, the project required certain design changes because of local city requirements.  These changes resulted in delays in completing the improvements.  This in turn necessitated increased funding to cover the delays, redesigns and improvements.  Alev informed Olster of these facts, and Olster directed Alev to take the necessary funds out of certain finished item categories of the construction draw schedule. Olster promised that the additional costs would be funded later.

31.  Despite Olster's promises that the P.P.B. loans would be extended before they came due on December 31, 1998, Olster attempted to coerce Alev into making drastic concessions on Alev's other projects as a precondition to extending the P.P.B. loans.  On or about December 18, 1998, Olster's attorneys provided him with a draft agreement to forward to Alev that would have required Alev to cross-collateralize all his various projects, and provide them as additional security for the P.P.B. loans.  In addition, the proposed agreement went far beyond a loan modification, and included a release in favor of Olster and his companies from any and all liabilities, including for fraud, misrepresentation and

1    breaches of fiduciary duty.

2         32.  Despite receiving the draft agreement from his attorneys on or about December

3    19, 1999, Olster waited to forward it to Alev until late in the evening of December 30,

4    1998.  Olster sent the proposal by facsimile to Alev along with instructions that the

5    agreement and related loan documents must be reviewed by Alev's attorney, signed and

6    returned no later than the next morning, December 31, 1998 – New Year's Eve.  However,

7    Alev was out of town and did not even receive the proposed loan modification and release

8    until after the P.P.B. loans' due dates.  When Alev did review the proposed loan

9    modifications and release, Alev refused to even consider agreeing to what he believed to

10   be coercive and unfair changes both to the P.P.B. loans, and to all the other loans for his

11   other projects unrelated to P.P.B.

12        33.  In response to Alev's refusal to release Olster and Alev's refusal to cross-

13   collateralize his various projects, Olster, Apollo Funding, Apollo Mortgage, Mrs. Olster,

14   Telese, Builders Financial, The Jet Group, InSouth, Southern Financial and National Fund

15   Control caused funding for all of Alev's loans – including all loans that were current and

16   required no extensions – to be frozen.  Olster conspired through his various companies and

17   related lenders and with National Fund Control, LLC to stop funding on each and every

18   Alev project, even where the loans were current.  As a direct result, all of Alev's projects

19   were halted; Alev's contractors, subcontractors and suppliers went unpaid; and marketing

20   for Alev's projects for resale was halted.  This unilateral act by Olster and his co-

21   conspirators resulted in all of Alev's projects suffering severe economic duress and

22   damages.

23        34.  In addition, defendants Olster and Builders Financial withheld other agreed

24   upon loans – including a loan to purchase a project know as Valdes Drive, LLC where Alev

25   had paid the fees associated with the loan and had received defendants' approval for the

26   loan – thereby depriving Alev of anticipated profits from the development and resale of

27   these additional properties.

28
     P:0146140.01:07495.002  9-May-00                7
     SECOND AMENDED COMPLAINT

35.  Defendant Apollo Funding has instituted foreclosures against Alev's California properties – namely, the Wishbone Way, Steele Canyon 2, Steele Canyon 14, Steele Canyon 33, Draper Plaza and Dove Hollow properties.  Until Olster conspired with National Fund Control to stop funding the California projects, each loan on the California properties was current.   Olster is attempting through Apollo Funding's foreclosures against the California properties to coerce Alev into capitulating to Olster's demands to release him from liability and to cross-collateralize all existing loans.

36.  In addition, defendants have miscalculated and overcharged plaintiffs for interest accruing under the loans on at least ten occasions.  Plaintiffs' requests to defendants Olster, Builders Financial and others to correct these overcharges have been ignored or rectified after considerable intervention.

37.  Plaintiffs are informed and believe, and on that basis allege, that at all times material to this action, Olster, Mrs. Olster, Telese, Apollo Mortgage, Apollo Funding, Builders Financial and The Jet Group were the agents of InSouth and Southern Financial, including pursuant to the provisions of contracts between them, and that in doing the acts alleged herein, Olster, Mrs. Olster, Telese, Apollo Mortgage, Apollo Funding, Builders Financial and The Jet Group were acting within the course and scope of that agency and with the permission and consent of InSouth and Southern Financial.

38.  Plaintiffs are further informed and believe, and on that basis allege, that in the course of such agency relationship, InSouth and Southern Financial, as principals, directed and/or ratified the wrongful conduct of Olster, Mrs. Olster, Telese, Apollo Funding, Apollo Mortgage, Builders Financial and/or The Jet Group alleged herein.

## ALTER EGO ALLEGATIONS

39.  Plaintiffs allege on information and belief that at all relevant times there existed, and now exists, a unity of interest and ownership between Olster, Mrs. Olster and Telese, on the one hand, and Apollo Funding, Apollo Mortgage, Builders Financial and The Jet Group, on the other hand, such that any individuality and separateness between Olster,

Exhibit A
Page 9

1   Mrs. Olster and Telese, on the one hand, and Apollo Funding, Apollo Mortgage, Builders

2   Financial and The Jet Group, on the other hand, has ceased.  Plaintiffs allege on

3   information and belief that Apollo Funding, Apollo Mortgage, Builders Financial and The  .

4   Jet Group, on the one hand, and Olster, Mrs. Olster and Telese, on the other hand, are the

5   alter egos of each other for at least the following reasons:

6        (a)    At all relevant times, Apollo Funding, Apollo Mortgage, Builders Financial

7   and The Jet Group were so inadequately capitalized that, compared with the business to be

8   done by them and the associated risks, their capitalization was trifling; and/or

9        (b)    Olster, Mrs. Olster and Telese used the assets of Apollo Funding, Apollo

10   Mortgage, Builders Financial and The Jet Group to be transferred to them and/or their sham

11   corporations without adequate consideration, and withdrew, transferred and/or

12   manipulated funds from the corporate bank accounts, other bank accounts and to and from

13   their sham corporations for their use without adequate consideration; and/or

14        (c)    Apollo Funding, Apollo Mortgage, Builders Financial and The Jet Group were

15   mere shells, instrumentalities and conduits through which Olster, Mrs. Olster and Telese

16   exercised complete control of the businesses to such an extent that any individuality or

17   separateness of Apollo Funding, Apollo Mortgage, Builders Financial and The Jet Group on

18   the one hand, and Olster, Mrs. Olster and Telese (and other corporations under their

19   individual or joint control), on the other hand, does not, and at all relevant times, did not

20   exist; and/or

21        (d)    Corporate formalities were not observed by Apollo Funding, Apollo

22   Mortgage, Builders Financial and The Jet Group; and/or

23        (e)    Olster, Mrs. Olster and Telese (and/or other corporations under their

24   individual or joint control) entered into transactions with Apollo Funding, Apollo Mortgage,

25   Builders Financial and The Jet Group without the approval of any disinterested directors or

26   shareholders and/or without adequate consideration.

27        40.  Plaintiffs allege on information and belief that adherence to the fiction of the

28

P:0146140.01:07495.002 9-May-00
SECOND AMENDED COMPLAINT

        9

Exhibit A
Page 10

separate existence of Apollo Funding, Apollo Mortgage, Builders Financial and The Jet

Group as entities separate and distinct from Olster, Mrs. Olster and Telese would permit

abuse of the corporate privilege and would sanction a fraud on the creditors of Apollo

Funding, Apollo Mortgage, Builders Financial and The Jet Group, all for the purpose of

avoiding and preventing attachment and execution by creditors, including plaintiffs,

thereby rendering Apollo Funding, Apollo Mortgage, Builders Financial and The Jet Group

unable to meet their financial obligations.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF – FRAUD

First Count – Affirmative Misrepresentation

41. Plaintiffs incorporate by reference the allegations contained in paragraphs 1

through 40 above, as fully and to the same extent as if set forth at length again in this

paragraph.

42. Each of the representations in Paragraphs 24, 25 and 29 above were false.  The

truth was:  The buy-back feature was a sham, and The Jet Group had no intention of ever

buying back any of the properties and did not have the financial ability to do so; none of

the defendants were licensed to act as mortgage brokers within the States of Arizona or

California; defendants did not intend to honor the terms of the loan agreements; and

defendants did not intend to extend the loan due-dates as promised.

43. Defendants, and each of them, made and/or ratified these misrepresentations

knowing them to be false.  Defendants, and each of them, made and/or ratified these

misrepresentations with the intent to defraud plaintiffs, and intended that plaintiffs rely

upon them to their detriment.  Plaintiffs reasonably believed the misrepresentations to be

true, and did in fact rely upon them to their detriment.

44. Plaintiffs suffered damages as a direct proximate result of the

misrepresentations, including but not limited to, (a) payment of unearned broker's

commissions of approximately $1,000,000.00; (b) payment of additional points to

1   defendants in return for the assurance that The Jet Group would honor the buy-back

2   feature; (c) payments to The Jet Group for its commitment to buy back the properties at

3   appraised value; (d) damages caused by defendants' refusal to fund loan draws in

4   accordance with the loan agreements; (e) damages caused by defendants' failure or refusal

5   to extend loans; (f) and other related payments and liabilities.

6   45.  As additional damages against defendants, and each of them, plaintiffs allege

7   that defendants were guilty of malice, fraud and oppression, and plaintiffs should recover,

8   in addition to actual damages, damages in an amount to make an example of and to punish

9   defendants.

10   Second Count – Deceit by Concealment

11   46.  Plaintiffs incorporate by reference the allegations contained in paragraphs 1

12   through 40 above, as fully and to the same extent as if set forth at length again in this

13   paragraph.

14   47.  Olster concealed or suppressed from plaintiffs that he had been convicted of the

15   crimes of embezzlement and several counts of forgery by the State of New Jersey in 1989;

16   that he was imprisoned for his fraud and embezzlement; and that he had been disbarred by

17   the State of Pennsylvania because of his criminal conduct as a result.

18   48.  Olster also failed to disclose that neither he nor Apollo Mortgage were licensed

19   in Arizona to act as a mortgage brokers in negotiating and obtaining mortgage loans for

20   plaintiffs.

21   49.  Olster and the other defendants conspired to conceal these facts from plaintiffs

22   with the intent to defraud and induce plaintiffs to act as described above.  At the time

23   plaintiffs entered into the transactions with defendants, plaintiffs were unaware of the

24   concealed and suppressed facts.  Had plaintiffs known of Olster's fraudulent criminal past,

25   they would not have entered into any business transactions with Olster and the other

26   defendants, and would not have reposed trust and confidence in Olster as their exclusive

27   broker in obtaining critical financing for their projects.  Likewise, had plaintiffs known that

28

1   Olster and Apollo Mortgage were unlicensed, they would not have relied upon Olster or

2   Apollo Mortgage to act as their mortgage brokers in obtaining financing for the projects, or

3   in providing personal guarantees for those loans.

4       50.  Plaintiffs suffered damages as a direct proximate result of defendants'

5   concealment, including but not limited to, (a) payment of unearned broker's commissions

6   of approximately $1,000,000.00; (b) payment of additional points to defendants in return

7   for the assurance that The Jet Group would honor the buy-back feature; (c) payments to The

8   Jet Group for its commitment to buy back the properties at appraised value; (d) damages

9   caused by defendants' refusal to fund loan draws in accordance with the loan agreements;

10   (e) damages caused by defendants' failure or refusal to extend loans; (f) and other related

11   payments and liabilities.

12       51.  As additional damages against defendants, and each of them, plaintiffs allege

13   that defendants were guilty of malice, fraud and oppression, and plaintiffs should recover,

14   in addition to actual damages, damages in an amount to make an example of and to punish

15   defendants.

16   Third Count – Negligent Misrepresentation

17       52.  Plaintiffs incorporate by reference the allegations contained in paragraphs 1

18   through 40 above, as fully and to the same extent as if set forth at length again in this

19   paragraph.

20       53.  As an alternative count to counts one and two above, plaintiffs allege that

21   defendants made and/or ratified the misrepresentations alleged above negligently and/or

22   with no reasonable belief in the truth thereof, and that defendants negligently omitted to

23   state the material facts described above.

24       54.  Each of the representations in Paragraphs 24, 25 and 29, above were false.  The

25   truth was:  The buy-back feature was a sham, and The Jet Group had no intention of ever

26   buying back any of the properties; none of the defendants were licensed to act as mortgage

27   brokers within the State of Arizona; defendants did not intend to honor the terms of the

28

1    loan agreements; and defendants did not intend to extend the loan due-dates as promised.

2    55. Plaintiffs reasonably believed the misrepresentations to be true, and did in fact

3    rely upon them to their detriment.

4    56. At the time plaintiffs entered into the transactions with defendants, plaintiffs

5    were unaware of the concealed and suppressed facts. Had plaintiffs known of Olster's

6    fraudulent criminal past, they would not have entered into any business transactions with

7    Olster and the other defendants, and would not have reposed trust and confidence in

8    Olster as their exclusive broker in obtaining critical financing for their projects. Likewise,

9    had plaintiffs known that Olster and Apollo Mortgage were unlicensed, they would not

10   have relied upon Olster or Apollo Mortgage to act as their mortgage brokers in obtaining

11   financing for the projects, or in providing personal guarantees for those loans.

12   57. Plaintiffs suffered damages as a direct proximate result of the misrepresentations

13   and concealment, including but not limited to, (a) payment of unearned broker's

14   commissions of approximately $1,000,000.00; (b) payment of additional points to

15   defendants in return for the assurance that The Jet Group would honor the buy-back

16   feature; (c) payments to The Jet Group for its commitment to buy back the properties at

17   appraised value; (d) damages caused by defendants' refusal to fund loan draws in

18   accordance with the loan agreements; (e) damages caused by defendants' failure or refusal

19   to extend loans, (f) and other related payments and liabilities.

20   SECOND CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTY

21   58. Plaintiffs incorporate by reference the allegations contained in paragraphs 1

22   through 40 above, as fully and to the same extent as if set forth at length again in this

23   paragraph.

24   59. As plaintiffs' brokers, Olster and Apollo Mortgage owed plaintiffs a fiduciary

25   duty, and were obligated to represent plaintiffs' interests fairly, diligently and in strict

26   accordance with all applicable state and federal banking statutes and regulations.

27   60. In misrepresenting the terms under which loans were made and falsely stating

28

P:0146140.01:07495.002 9-May-00                      13
SECOND AMENDED COMPLAINT

1  that The Jet Group would buy-back the subject projects upon request, Olster and Apollo

2  Mortgage violated their fiduciary duties to plaintiffs.  In addition, by favoring the interests of

3  the lenders over those of plaintiffs, Olster and Apollo Mortgage further violated their

4  fiduciary duties.

5      61.  In addition to the over forty (40) loans that Olster and Apollo Mortgage

6  brokered for plaintiffs, defendants negotiated and promised dozens of other loans which

7  were withheld in an effort to coerce and pressure plaintiffs into making additional

8  concessions to defendants.

9      62.  Plaintiffs suffered damages as a direct proximate result of defendants' breach of

10  fiduciary duty, including but not limited to, (a) payment of unearned broker's commissions

11  of approximately $1,000,000.00; (b) payment of additional points to defendants in return

12  for the assurance that The Jet Group would honor the buy-back feature; (c) payments to The

13  Jet Group for its commitment to buy back the properties at appraised value; (d) damages

14  caused by defendants' refusal to fund loan draws in accordance with the loan agreements;

15  (e) damages caused by defendants' failure or refusal to extend loans; (f) and other related

16  payments and liabilities.

17              THIRD CLAIM FOR RELIEF – BREACH OF CONTRACTS

18      63.  Plaintiffs incorporate by reference the allegations contained in paragraphs 1

19  through 40 above, as fully and to the same extent as if set forth at length again in this

20  paragraph.

21      64.  Since on or about January 1, 1999 and continuously through the present,

22  defendants have breached the loan commitments to plaintiffs by failing to fund

23  development of plaintiffs' existing projects, and by refusing to fund additional promised

24  loans for other planned projects.

25      65.  Defendants further violated the covenant of good faith and fair dealing implied

26  by law in every agreement by acting or declining to act in such a way as to deprive

27  plaintiffs of the benefit of their bargains.

28

66. Plaintiffs have performed all obligations to defendants except those obligations plaintiffs were prevented or excused from performing.

67. Plaintiffs suffered damages caused by defendants' breach of contracts in the following respects: (a) compensatory damages in an amount to be proven at trial, together with interest thereon at the legal rate from date of breach until date of recovery; (b) loss of profit on resale of properties; (c) and for costs of suit including attorneys' fees.

FOURTH CLAIM FOR RELIEF – ACCOUNTING

68. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again in this paragraph.

69. As a result of defendants' actions, defendants have been unjustly enriched at plaintiffs' expense. The precise amount of the benefit retained by defendants as a result of their wrongful conduct is sufficiently uncertain as to require an accounting in order to ascertain the exact damages due to plaintiffs.

FIFTH CLAIM FOR RELIEF – REFUND OF UNEARNED COMMISSIONS

70. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again in this paragraph.

71. Olster and Apollo Mortgage acted as mortgage brokers in Arizona by negotiating and obtaining the above loans on behalf of the plaintiff entities as borrowers, and Alev and BAM as guarantors. Virtually all borrowers, and both guarantors are residents of, or are incorporated in, Arizona. Olster and Apollo Mortgage were required to possess valid Arizona mortgage broker's licenses to conduct brokerage activities in that state, and were not permitted to receive broker's commissions arising out of such brokerage activities within Arizona without holding a valid Arizona broker's license.

72. Plaintiffs paid to Olster and Apollo Mortgage broker commissions in excess of $1,000,000.00 arising out of the unlicensed brokerage activities in Arizona.

73. Olster and Apollo Mortgage are obligated to refund the unearned, illegally obtained commissions.

### SIXTH CLAIM FOR RELIEF – USURY

74. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again in this paragraph.

75. Within the applicable limitation period(s), plaintiffs, pursuant to their contracts with defendants, have paid monies to defendants, including accumulated points and loan origination fees, in order to secure funding for plaintiffs' projects.  Plaintiffs further allege that InSouth and Southern Financial purchased, took over and otherwise acquired such contracts from certain of the defendants.

76. The payment terms of the contracts are usurious and violate the usury laws of California, Arizona and Tennessee, as well as federal law, which each prescribe limitations on the lawful interest rate, and charges, fees and commissions, that may be imposed under such contracts.

77. The payments made by plaintiffs were in excess of the maximum rate of interest allowed by the usury laws of California, Arizona and Tennessee, as well as federal law, and plaintiffs are entitled to recover double and treble the amount of those payments.

### SEVENTH CLAIM FOR RELIEF – VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200 ET SEQ.

78. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again in this paragraph.

79. By virtue of defendants' acts as alleged above, defendants are engaged in unlawful and unfair trade practices.  Plaintiffs, on their own behalf as well as on behalf of the general public, seek recovery from defendants for violations of California Business & Professions Code section 17200 et seq.

80. By reason of the foregoing, defendants have been improperly and unjustly enriched at the expense of plaintiffs and the public in an amount as yet unascertained, in a sum to be proven at the time of trial so that defendants can make appropriate restitution.

81. Plaintiffs and the public are being irreparably harmed by defendants' unfair trade practices and unfair competition. There is no adequate remedy at law, thereby justifying injunctive relief.

82. Plaintiffs further request an award of all attorney's fees and costs associated with the bringing of this action under California Business & Professions Code section 17200 et seq.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.      Damages in an amount to be proven at trial.

2.      A mandatory injunction directing defendants to resume funding the subject loans.

3.      An injunction staying all efforts by defendants to foreclose on the subject California properties pending trial in this matter.

4.      Punitive damages in an amount to punish defendants and deter other fraudulent and oppressive conduct.

5.      For the assessment of double and treble damages against defendants.

6.      Interest according to proof.

7.      For an accounting from defendants of all monies and other benefits due plaintiffs.

8.      For restitution of all monies gained by defendants as a result of their unlawful acts.

9.      For reasonable attorneys' fees.

10.     For all other relief the Court finds proper.

1                       DEMAND FOR JURY TRIAL

2          Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules

3 of Civil Procedure.

4

5 DATED: May 9, 2000            SOLOMON WARD SEIDENWURM & SMITH, LLP

6

7                      By _____
                      NORMAN L. SMITH

8                       RICHARD E. MCCARTHY
                      KARL A. SANDOVAL

9                       Attorneys for Plaintiffs
                      Benjamin A. Alev, Draper Plaza, LLC, BAM

10                     Investment, Inc., ABA, LLC, Benjamin A. Alev,
                     Trustee of the KTB Irrevocable Trust, ALKA

11                     Enterprises, LLC, 2903 Wishbone Way, LLC, Steele
                     Canyon 2, LLC, Steele Canyon 14, LLC, Steele
                     Canyon 33, LLC, Dove Hollow, LLC, P.P.B., LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   NORMAN L. SMITH  [State Bar 106344]
    RICHARD E. MCCARTHY  [State Bar 106050]
2   KARL A. SANDOVAL [State Bar 170190]
    SOLOMON WARD SEIDENWURM & SMITH, LLP
3   401 B Street, Suite 1200
    San Diego, CA 92101
4   Telephone:  (619) 231-0303
    Facsimile:  (619) 231-4755
5

6   Attorneys for Defendants and Cross-Complainants

7

8                 IN THE SUPERIOR COURT OF CALIFORNIA

9                          SAN DIEGO COUNTY

10

11  APOLLO FUNDING CORP., a Delaware            Case No.:  GIC 732437
    corporation,
12                                              SECOND AMENDED CROSS-
                    Plaintiff,                  COMPLAINT
13
    v.                                          I/C JUDGE:  CHARLES R. HAYES
14                                              DEPT. 66
    BENJAMIN A. ALEV, an individual;
15  AMNON KAWA, an individual; DRAPER           Action Filed:  July 9, 1999
    PLAZA, LLC,  a Nevada limited liability
16  company; AMKA HOLDINGS, LLC, a
    Nevada limited liability company; BAM
17  INVESTMENT, INC., an Arizona
    corporation; ABA, LLC, a Nevada limited
18  liability company; BENJAMIN A. ALEV,
    TRUSTEE OF THE KTB IRREVOCABLE
19  TRUST, ALKA ENTERPRISES, LLC, an
    Arizona limited liability company; STEELE
20  CANYON 2, LLC, an Arizona limited
    liability company; STEELE CANYON 14,
21  LLC, an Arizona limited liability company;
    STEELE CANYON 33, LLC, an Arizona
22  limited liability company; DOVE
    HOLLOW, LLC, an Arizona limited
23  liability company; and DOES 1 through
    200, inclusive,
24
                    Defendants.
25  _____

26  BENJAMIN A. ALEV, an individual;
    DRAPER PLAZA, LLC,  a Nevada limited
27  liability company; BAM INVESTMENT,

28  P:0146724.01:07495.002  28-Apr-00

F I L E D
STEPHEN THUNBERG
Clerk of the Superior Court

MAY 1 6 2000

By· D LIM, Deputy

Exhibit B
Page 20

COPY

INC., an Arizona corporation; ABA, LLC, a
Nevada limited liability company;
BENJAMIN A. ALEV, TRUSTEE OF THE
KTB IRREVOCABLE TRUST; ALKA
ENTERPRISES, LLC, an Arizona limited
liability company; STEELE CANYON 2,
LLC, an Arizona limited liability company;
STEELE CANYON 14, LLC, an Arizona
limited liability company; STEELE
CANYON 33, LLC, an Arizona limited
liability company; DOVE HOLLOW, LLC,
an Arizona limited liability company, 2903
WISHBONE WAY, LLC, an Arizona limited
liability company; P.P.B., LLC, an Arizona
limited liability company,

    Cross-complainants,

v.

APOLLO FUNDING CORP., a Delaware
corporation, BRUCE A. OLSTER, an
individual, APOLLO MORTGAGE &
FINANCIAL SERVICES, INC., a Florida
corporation, MADELINE OLSTER, an
individual, JOSEPH E. TELESE, an
individual, BUILDERS FINANCIAL
GROUP INCORPORATED, a Delaware
corporation, NATIONAL FUND
CONTROL, LLC, a Colorado corporation,
THE JET GROUP CORP., a Delaware
corporation, INSOUTH BANK, a
Tennessee corporation, SOUTHERN
FINANCIAL, INC., a Tennessee
corporation, and ROES 1 through 200,
inclusive,

    Cross-defendants.

Cross-complainants allege as follows:

I.

THE PARTIES

 1.  Cross-complainant BENJAMIN A. ALEV ("Alev") is an individual residing in the

State of Arizona.  Alev is the trustee of cross-complainant the KTB Irrevocable Trust.  The

KTB Irrevocable Trust ("KTB") is the sole member of cross-complainant ABA, LLC,  a

limited liability company.  ABA, LLC ("ABA") is a limited liability company organized and

1   existing under the laws of the State of Nevada, having its principal place of business in

2   Carson City, Nevada and is authorized to do business in California.

3         2. Cross-complainant P.P.B., LLC ("PPB") is a limited liability company organized

4   and existing under the laws of the State of Arizona, having its principal place of business in

5   Tucson, Arizona.

6         3. Cross-complainant DRAPER PLAZA, LLC ("Draper") is a limited liability

7   company organized and existing under the laws of the State of Nevada, having its principal

8   place of business in Carson City, Nevada and is authorized to do business in California.

9         4. Cross-complainant BAM INVESTMENT, INC. ("BAM") is a corporation organized

10  and existing under the laws of the State of Arizona, having its principal place of business in

11  Tucson, Arizona and is authorized to do business in California.

12        5. Cross-complainant ALKA ENTERPRISES, LLC ("ALKA") is a limited liability

13  company organized and existing under the laws of the State of Arizona, having its principal

14  place of business in Tucson, Arizona and is authorized to do business in California.

15        6. Cross-complainant 2903 WISHBONE WAY, LLC ("Wishbone") is a limited

16  liability company organized and existing under the laws of the State of Arizona, having its

17  principal place of business in Tucson, Arizona and is authorized to do business in

18  California.

19        7. Cross-complainant STEELE CANYON 2, LLC ("Steele 2") is a limited liability

20  company organized and existing under the laws of the State of Arizona, having its principal

21  place of business in Tucson, Arizona and is authorized to do business in California.

22        8. Cross-complainant STEELE CANYON 14, LLC ("Steele 14") is a limited liability

23  company organized and existing under the laws of the State of Arizona, having its principal

24  place of business in Tucson, Arizona and is authorized to do business in California.

25        9. Cross-complainant STEELE CANYON 33, LLC ("Steele 33") is a limited liability

26  company organized and existing under the laws of the State of Arizona, having its principal

27  place of business in Tucson, Arizona and is authorized to do business in California.

28  P:0146724.01:07495.002                         2

Exhibit B

1       10.  Cross-complainant DOVE HOLLOW, LLC ("Dove") is a limited liability

2   company organized and existing under the laws of the State of Arizona, having its principal

3   place of business in Tucson, Arizona and is authorized to do business in California.  Alev,

4   Draper, BAM, ABA, ALKA, Wishbone, Steele 2, Steele 14, Steele 33, PPB, KTB and Dove

5   are collectively referred to herein as "Cross-complainants."

6       11.  Cross-complainants are informed and believe, and on that basis allege, that at

7   all times material to this action, cross-defendant BRUCE A. OLSTER ("Olster") is, and at all

8   times relevant was, a citizen of Florida, in Pinellas County, Florida.

9       12.  Cross-complainants are informed and believe, and on that basis allege, that at

10  all times material to this action, cross-defendant APOLLO FUNDING CORP. ("Apollo

11  Funding") was and is a corporation organized and existing under the laws of the State of

12  Delaware, with its principal place of business in the State of Florida.

13      13.  Cross-complainants are informed and believe, and on that basis allege, that at

14  all times material to this action, cross-defendant APOLLO MORTGAGE & FINANCIAL

15  SERVICES, INC. ("Apollo Mortgage") was a corporation organized and existing under the

16  laws of the State of Florida. Cross-complainants are informed and believe, and on that basis

17  allege, that Apollo Mortgage filed a voluntary dissolution in Florida in or about May, 1999.

18      14.  Cross-complainants are informed and believe, and on that basis allege, that at

19  all times material to this action, cross-defendant MADELINE OLSTER ("Mrs. Olster") is, and

20  at all times relevant was, a citizen of Florida, in Pinellas County, Florida.  Mrs. Olster is

21  Olster's wife, and cross-complainants are informed and believe, and on that basis allege,

22  that she acted as the officer, director and/or agent of one or more of the cross-defendants.

23      15.  Cross-complainants are informed and believe, and on that basis allege, that at

24  all times material to this action, cross-defendant JOSEPH E. TELESE ("Telese") is, and at all

25  times relevant was, a citizen of Florida, and held the title of president of cross-defendant

26  BUILDERS FINANCIAL GROUP INCORPORATED.

27      16.  Cross-complainants are informed and believe, and on that basis allege, that at

28  P.0146724.01:07495.002                     3

Exhibit B
Page 23

1  all times material to this action, cross-defendant BUILDERS FINANCIAL GROUP

2  INCORPORATED ("Builders Financial") was and is a corporation organized and existing

3  under the laws of the State of Florida with its principal place of business in the State of

4  Florida.

5       17.  Cross-complainants are informed and believe, and on that basis allege, that at

6  all times material to this action, cross-defendant NATIONAL FUND CONTROL, LLC was

7  and is a limited liability company organized and existing under the laws of the State of

8  Colorado, with its principal place of business in the State of Colorado.

9       18.  Cross-complainants are informed and believe, and on that basis allege, that at

10  all times material to this action, cross-defendant THE JET GROUP CORP. ("The Jet Group")

11  was and is a corporation organized and existing under the laws of the State of Delaware,

12  with its principal place of business in the State of Florida.

13       19. Plaintiffs are informed and believe, and on that basis allege, that at all times

14  material to this action, cross-defendant INSOUTH BANK ("InSouth") was and is a

15  corporation organized and existing under the laws of the State of Tennessee, with its

16  principal place of business in the State of Tennessee.

17       20. Plaintiffs are informed and believe, and on that basis allege, that at all times

18  material to this action, cross-defendant SOUTHERN FINANCIAL, INC. ("Southern

19  Financial") was and is a corporation organized and existing under the laws of the State of

20  Tennessee, with its principal place of business in the State of Tennessee.

21       21. The true names and capacities, whether individual, corporate, associate, or

22  otherwise, of the cross-defendants sued herein as ROES 1 through 200, inclusive, are

23  unknown to cross-complainants, who therefore sue said cross-defendants by such fictitious

24  names.  Cross-complainants will amend this Cross-complaint to allege their true names and

25  capacities when ascertained.  Cross-complainants are informed and believe, and thereon

26  allege, that each of such fictitiously named cross-defendants is responsible in some manner

27  for the occurrences alleged and that cross-complainants' damages as alleged were

28  P:0146724.01:07495.002                           4

1  proximately caused by said cross-defendants' conduct.

2      22.  Cross-complainants are informed and believe, and on that basis allege, that at

3  all times material to this action, cross-defendants and each of them, conspired among

4  themselves and with others – including officers, employees, agents, undisclosed lenders

5  and attorneys -- to carry out the acts described below.  Cross-complainants are informed

6  and believe, and on that basis allege, that in the course and scope of such conspiracy,

7  cross-defendants and each of them, performed, aided, encouraged, or ratified performance

8  of the wrongful acts set out below in this Cross-complaint.

9                                    II.

10              FACTS COMMON TO ALL CAUSES OF ACTION

11      23.  Cross-complainant Alev has been involved in real estate development since

12  approximately 1983.  Over the years, he developed dependable financing sources for his

13  business.

14      24.  In or about 1996, Alev was introduced to cross-defendant Olster.  Olster

15  represented to Alev that he was a mortgage broker with a wide network of unique financing

16  opportunities.  Olster represented that through his companies -- Builders Financial, Apollo

17  Mortgage, and Apollo Funding -- he would assist Alev in obtaining construction loans,

18  development loans, and other loan and funding options that would be of great benefit to

19  Alev's business.  During the course of the relationship, Olster represented that he had a

20  pool of $100,000,000 to $150,000,000 of development financing at his disposal.  Olster

21  further represented that Alev would be one of only five national developers who would

22  have access to this financing pool.  Most importantly, Olster represented that the lenders he

23  represented provided a unique financing arrangement through an Olster-related entity, The

24  Jet Group.  Olster and his lenders, through The Jet Group, would guaranty purchase of the

25  subject projects at purchase prices based upon appraisals, thereby providing cross-

26  complainants the benefit of a standby or back-up purchase commitment which would

27  guaranty purchase of the properties.  For this important commitment, and in reliance on

28  P:0146724.01:07495.002                          5

Exhibit B
Page 25

1   cross-defendants' representations and promises, cross-complainants paid fees equal to 2.5%

2   of each loan amount to The Jet Group for the issuance of its standby purchase

3   commitments to repurchase the properties at appraised value if so desired by cross-

4   complainants.

5       25.  Olster and Alev developed a relationship based upon trust, and Alev began

6   relying exclusively upon Olster and his companies and related lenders to supply the critical

7   funding for Alev's development projects.  As part of this relationship, Olster represented to

8   Alev that he was able to act as a mortgage broker to secure loans for Alev's projects in

9   Arizona and California and would assist Alev in developing properties in those states.

10       26.  Since 1996, Olster and his affiliated lenders made and/or brokered over forty

11   (40) loans for Alev's projects.  Olster and his companies were paid approximately

12   $1,000,000 in fees on these loans.

13       27.  The projects funded through these loans included projects developed in

14   Arizona, and several more in California.  Loan commitments were brokered by Olster

15   through Apollo Mortgage.  Olster provided Alev with loan commitments through Builders

16   Financial.  Olster in turn provided Alev with funding through Apollo Funding.  Cross-

17   complainants have since discovered that other additional undisclosed lenders, including

18   InSouth and Southern Financial, have been involved and that Apollo Funding secretly

19   transferred certain loans to these lenders.  Such lenders acted in concert with certain of the

20   cross-defendants.

21       28.  Through these various Olster entities, Alev was able to develop several projects,

22   and the loans were used to pay the critical construction and development costs necessary

23   for Alev's projects to succeed and return a profit.  Cross-complainants attach as Exhibits "1"

24   - "36" copies of the loan and certain operative documents, which Exhibits are incorporated

25   herein by this reference.

26       29.  One of Alev's projects in Arizona – Plaza Pueblo Bonito, LLC (hereafter

27   "P.P.B.") – involved fifteen lots under development.  Olster brokered and provided separate

28

1   loans through his companies to develop each individual lot.  By the end of 1998, it was

2   necessary for Alev to request an extension on the P.P.B. loans.  Alev and Olster had agreed

3   from the inception that the lots could not be completely developed within the initial short-

4   term loan period, and it would be necessary to later extend the due dates for the loans.  As

5   it developed, the project required certain design changes because of local city

6   requirements.  These changes resulted in delays in completing the improvements.  This in

7   turn necessitated increased funding to cover the delays, redesigns and improvements.  Alev

8   informed Olster of these facts, and Olster directed Alev to take the necessary funds out of

9   certain finished item categories of the construction draw schedule. Olster promised that the

10  additional costs would be funded later.

11       30.  Despite Olster's promises that the P.P.B. loans would be extended before they

12  came due on December 31, 1998, Olster attempted to coerce Alev into making drastic

13  concessions on Alev's other projects as a precondition to extending the P.P.B. loans.  On or

14  about December 18, 1998, Olster's attorneys provided him with a draft agreement to

15  forward to Alev that would have required Alev to cross-collateralize all his various projects,

16  and provide them as additional security for the P.P.B. loans.  In addition, the proposed

17  agreement went far beyond a loan modification, and included a release in favor of Olster

18  and his companies from any and all liabilities, including for fraud, misrepresentation and

19  breaches of fiduciary duty.

20       31.  Despite receiving the draft agreement from his attorneys on or about December

21  19, 1999, Olster waited to forward it to Alev until late in the evening of December 30,

22  1998.  Olster sent the proposal by facsimile to Alev along with instructions that the

23  agreement and related loan documents must be reviewed by Alev's attorney, signed and

24  returned no later than the next morning, December 31, 1998 – New Year's Eve.  However,

25  Alev was out of town and did not even receive the proposed loan modification and release

26  until after the P.P.B. loans' due dates.  When Alev did review the proposed loan

27  modifications and release, Alev refused to even consider agreeing to what he believed to

28  P:0146724.01:07495.002                        7

1   be coercive and unfair changes both to the P.P.B. loans, and to all the other loans for his

2   other projects unrelated to P.P.B.

3        32.  In response to Alev's refusal to release Olster and Alev's refusal to cross-

4   collateralize his various projects, Olster, Apollo Funding, Apollo Mortgage, Mrs. Olster,

5   Telese, Builders Financial, The Jet Group, InSouth, Southern Financial and National Fund

6   Control caused funding for <u>all</u> of Alev's loans – including all loans that were current and

7   required no extensions – to be frozen.  Olster conspired through his various companies and

8   related lenders and with National Fund Control, LLC to stop funding on each and every

9   Alev project, even where the loans were current.  As a direct result, all of Alev's projects

10  were halted; Alev's contractors, subcontractors and suppliers went unpaid; and marketing

11  for Alev's projects for resale was halted.  This unilateral act by Olster and his co-

12  conspirators resulted in all of Alev's projects suffering severe economic duress and

13  damages.

14       33.  In addition, cross-defendants Olster and Builders Financial withheld other

15  agreed upon loans – including a loan to purchase a project known as Valdes Drive, LLC

16  where Alev had paid the fees associated with the loan and had received cross-defendants'

17  approval for the loan – thereby depriving Alev of anticipated profits from the development

18  and resale of these additional properties.

19       34.  Cross-defendant Apollo Funding has instituted foreclosures against Alev's

20  California properties – namely, the Wishbone Way, Steele Canyon 2, Steele Canyon 14,

21  Steele Canyon 33, Draper Plaza and Dove Hollow properties.  Until Olster conspired with

22  National Fund Control to stop funding the California projects, each loan on the California

23  properties was current.   Olster is attempting through Apollo Funding's foreclosures against

24  the California properties to coerce Alev into capitulating to Olster's demands to release him

25  from liability and to cross-collateralize all existing loans.

26       35.  In addition, cross-defendants have miscalculated and overcharged cross-

27  complainants for interest accruing under the loans on at least ten occasions.  Cross-

28  P:0146724.01:07495.002                          8

1  complainants' requests to cross-defendants Olster, Builders Financial and others to correct

2  these overcharges have been ignored or rectified after considerable intervention.

3      36. Plaintiffs are informed and believe, and on that basis allege, that at all times

4  material to this action, Olster, Mrs. Olster, Telese, Apollo Mortgage, Apollo Funding,

5  Builders Financial and/or The Jet Group were the agents of InSouth and Southern Financial,

6  including pursuant to the provisions of contracts between them, and that in doing the acts

7  alleged herein, Olster, Mrs. Olster, Telese, Apollo Mortgage, Apollo Funding, Builders

8  Financial and The Jet Group were acting within the course and scope of that agency and

9  with the permission and consent of InSouth and Southern Financial.

10      37.  Plaintiffs are further informed and believe, and on that basis allege, that in the

11  course of such agency relationship, InSouth and Southern Financial, as principals, directed

12  and/or ratified the wrongful conduct of Olster, Mrs. Olster, Telese, Apollo Funding, Apollo

13  Mortgage, Builders Financial and The Jet Group alleged herein.

14      38.  In connection with the acts alleged, defendants directly or indirectly used the

15  means and instrumentalities of interstate commerce, including United States Mail and

16  interstate wire communications.

17  ALTER EGO ALLEGATIONS

18      39.  Cross-complainants allege on information and belief that at all relevant times

19  there existed, and now exists, a unity of interest and ownership between Olster, Mrs. Olster

20  and Telese, on the one hand, and Apollo Funding, Apollo Mortgage, Builders Financial and

21  The Jet Group, on the other hand, such that any individuality and separateness between

22  Olster, Mrs. Olster and Telese, on the one hand, and Apollo Funding, Apollo Mortgage,

23  Builders Financial and The Jet Group, on the other hand, has ceased.  Cross-complainants

24  allege on information and belief that Apollo Funding, Apollo Mortgage, Builders Financial

25  and The Jet Group, on the one hand, and Olster, Mrs. Olster and Telese, on the other hand,

26  are the alter egos of each other for at least the following reasons:

27      (a)    At all relevant times, Apollo Funding, Apollo Mortgage, Builders Financial

28  P:0146724.01:07495.002

9

Exhibit B<br/>Page 29

1   and The Jet Group were so inadequately capitalized that, compared with the business to be

2   done by them and the associated risks, their capitalization was trifling; and/or

3       (b)    Olster, Mrs. Olster and Telese used the assets of Apollo Funding, Apollo

4   Mortgage, Builders Financial and The Jet Group to be transferred to them and/or their sham

5   corporations without adequate consideration, and withdrew, transferred and/or

6   manipulated funds from the corporate bank accounts, other bank accounts and to and from

7   their sham corporations for their use without adequate consideration; and/or

8       (c)    Apollo Funding, Apollo Mortgage, Builders Financial and The Jet Group were

9   mere shells, instrumentalities and conduits through which Olster, Mrs. Olster and Telese

10   exercised complete control of the businesses to such an extent that any individuality or

11   separateness of Apollo Funding, Apollo Mortgage, Builders Financial and The Jet Group on

12   the one hand, and Olster, Mrs. Olster and Telese (and other corporations under their

13   individual or joint control), on the other hand, does not, and at all relevant times, did not

14   exist; and/or

15       (d)    Corporate formalities were not observed by Apollo Funding, Apollo

16   Mortgage, Builders Financial and The Jet Group; and/or

17       (e)    Olster, Mrs. Olster and Telese (and/or other corporations under their

18   individual or joint control) entered into transactions with Apollo Funding, Apollo Mortgage,

19   Builders Financial and The Jet Group without the approval of any disinterested directors or

20   shareholders and/or without adequate consideration.

21       40. Cross-complainants allege on information and belief that adherence to the

22   fiction of the separate existence of Apollo Funding, Apollo Mortgage, Builders Financial

23   and The Jet Group as entities separate and distinct from Olster, Mrs. Olster and Telese

24   would permit abuse of the corporate privilege and would sanction a fraud on the creditors

25   of Apollo Funding, Apollo Mortgage, Builders Financial and The Jet Group, all for the

26   purpose of avoiding and preventing attachment and execution by creditors, including cross-

27   complainants, thereby rendering Apollo Funding, Apollo Mortgage, Builders Financial and

28   P:0146724.01:07495.002

10

Exhibit B
Page 30

1  The Jet Group unable to meet their financial obligations.

2  <u>FIRST CAUSE OF ACTION</u>

3  (Fraud)

4  A.  <u>Affirmative Misrepresentation</u>

5  41.  Cross-complainants incorporate by reference the allegations contained in

6  paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again

7  in this paragraph.

8  42.  Each of the representations in Paragraphs 24, 25 and 29 above were false.  The

9  truth was:  The buy-back feature was a sham, and The Jet Group had no intention of ever

10  buying back any of the properties and did not have the financial ability to do so; none of

11  the cross-defendants were licensed to act as mortgage brokers within the States of Arizona

12  or California; cross-defendants did not intend to honor the terms of the loan agreements;

13  and cross-defendants did not intend to extend the loan due-dates as promised.

14  43.  Cross-defendants, and each of them, made and/or ratified these

15  misrepresentations knowing them to be false.  Cross-defendants, and each of them, made

16  and/or ratified these misrepresentations with the intent to defraud cross-complainants, and

17  intended that cross-complainants rely upon them to their detriment.  Cross-complainants

18  reasonably believed the misrepresentations to be true, and did in fact rely upon them to

19  their detriment.

20  44.  Cross-complainants suffered damages as a direct proximate result of the

21  misrepresentations, including but not limited to, (a) payment of unearned broker's

22  commissions of approximately $1,000,000.00; (b) payment of additional points to cross-

23  defendants in return for the assurance that The Jet Group would honor the buy-back

24  feature; (c) payments to The Jet Group for its commitment to buy back the properties at

25  appraised value; (d) damages caused by cross-defendants' refusal to fund loan draws in

26  accordance with the loan agreements; (e) damages caused by cross-defendants' failure or

27  refusal to extend loans; (f) and other related payments and liabilities.

28  P:0146724.01:07495.002                          11

45.  As additional damages against cross-defendants, and each of them, cross-complainants allege that cross-defendants were guilty of malice, fraud and oppression, and cross-complainants should recover, in addition to actual damages, damages in an amount to make an example of and to punish cross-defendants.

B. <u>Deceit by Concealment</u>

46.  Cross-complainants incorporate by reference the allegations contained in paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again in this paragraph.

47.  Olster concealed or suppressed from cross-complainants that he had been convicted of the crimes of embezzlement and several counts of forgery by the State of New Jersey in 1989; that he was imprisoned for his fraud and embezzlement; and that he had been disbarred by the State of Pennsylvania because of his criminal conduct as a result.

48.  Olster also failed to disclose that neither he nor Apollo Mortgage were licensed in Arizona to act as a mortgage brokers in negotiating and obtaining mortgage loans for cross-complainants.

49.  Olster and the other cross-defendants conspired to conceal these facts from cross-complainants with the intent to defraud and induce cross-complainants to act as described above.  At the time cross-complainants entered into the transactions with cross-defendants, cross-complainants were unaware of the concealed and suppressed facts.  Had cross-complainants known of Olster's fraudulent criminal past, they would not have entered into any business transactions with Olster and the other cross-defendants, and would not have reposed trust and confidence in Olster as their exclusive broker in obtaining critical financing for their projects.  Likewise, had cross-complainants known that Olster and Apollo Mortgage were unlicensed, they would not have relied upon Olster or Apollo Mortgage to act as their mortgage brokers in obtaining financing for the projects, or in providing personal guarantees for those loans.

50.  Cross-complainants suffered damages as a direct proximate result of cross-

P:0146724.01:07495.002

12

Exhibit B
Page 32

1   defendants' concealment, including but not limited to, (a) payment of unearned broker's

2   commissions of approximately $1,000,000.00; (b) payment of additional points to cross-

3   defendants in return for the assurance that The Jet Group would honor the buy-back

4   feature; (c) payments to the Jet Group for its commitment to buy back the properties at

5   appraised value; (d) damages caused by cross-defendants' refusal to fund loan draws in

6   accordance with the loan agreements; (e) damages caused by cross-defendants' failure or

7   refusal to extend loans; (f) and other related payments and liabilities.

8        51. As additional damages against cross-defendants, and each of them, cross-

9   complainants allege that cross-defendants were guilty of malice, fraud and oppression, and

10   cross-complainants should recover, in addition to actual damages, damages in an amount

11   to make an example of and to punish cross-defendants.

12       C.     Negligent Misrepresentation

13        52. Cross-complainants incorporate by reference the allegations contained in

14   paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again

15   in this paragraph.

16        53. As an alternative count to counts one and two above, cross-complainants allege

17   that cross-defendants made and/or ratified the misrepresentations alleged above negligently

18   and/or with no reasonable belief in the truth thereof, and that cross-defendants negligently

19   omitted to state the material facts described above.

20        54. Each of the representations in Paragraphs 24, 25 and 29 above were false. The

21   truth was: The buy-back feature was a sham, and The Jet Group had no intention of ever

22   buying back any of the properties; none of the cross-defendants were licensed to act as

23   mortgage brokers within the State of Arizona; cross-defendants did not intend to honor the

24   terms of the loan agreements; and cross-defendants did not intend to extend the loan due-

25   dates as promised.

26        55. Cross-complainants reasonably believed the misrepresentations to be true, and

27   did in fact rely upon them to their detriment.

28   P:0146724.01:07495.002

Exhibit B
Page 33

1    56. At the time cross-complainants entered into the transactions with cross-

2    defendants, cross-complainants were unaware of the concealed and suppressed facts. Had

3    cross-complainants known of Olster's fraudulent criminal past, they would not have

4    entered into any business transactions with Olster and the other cross-defendants, and

5    would not have reposed trust and confidence in Olster as their exclusive broker in

6    obtaining critical financing for their projects. Likewise, had cross-complainants known that

7    Olster and Apollo Mortgage were unlicensed, they would not have relied upon Olster or

8    Apollo Mortgage to act as their mortgage brokers in obtaining financing for the projects, or

9    in providing personal guarantees for those loans.

10   57. Cross-complainants suffered damages as a direct proximate result of the

11   misrepresentations and concealment, including but not limited to, (a) payment of unearned

12   broker's commissions of approximately $1,000,000.00; (b) payment of additional points to

13   cross-defendants in return for the assurance that the Jet Group would honor the buy-back

14   feature; (c) payments to the Jet Group for its commitment to buy back the properties at

15   appraised value; (d) damages caused by cross-defendants' refusal to fund loan draws in

16   accordance with the loan agreements; (e) damages caused by cross-defendants' failure or

17   refusal to extend loans; (f) and other related payments and liabilities.

18                                    SECOND CAUSE OF ACTION

19                                    (Breach Of Fiduciary Duty)

20   58. Cross-complainants incorporate by reference the allegations contained in

21   paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again

22   in this paragraph.

23   59. As cross-complainants' brokers, Olster and Apollo Mortgage owed cross-

24   complainants a fiduciary duty, and were obligated to represent cross-complainants' interests

25   fairly, diligently and in strict accordance with all applicable state and federal banking

26   statutes and regulations.

27   60. In misrepresenting the terms under which loans were made and falsely stating

28   P:0146724.01:07495.002                         14

1   that The Jet Group would buy-back the subject projects upon request, Olster and Apollo

2   Mortgage violated their fiduciary duties to cross-complainants. In addition, by favoring the

3   interests of the lenders over those of cross-complainants, Olster and Apollo Mortgage

4   further violated their fiduciary duties.

5   　　61. In addition to the over forty (40) loans that Olster and Apollo Mortgage

6   brokered for cross-complainants, cross-defendants negotiated and promised dozens of other

7   loans which were withheld in an effort to coerce and pressure cross-complainants into

8   making additional concessions to cross-defendants.

9   　　62. Cross-complainants suffered damages as a direct proximate result of cross-

10  defendants' breach of fiduciary duty, including but not limited to, (a) payment of unearned

11  broker's commissions of approximately $1,000,000.00; (b) payment of additional points to

12  cross-defendants in return for the assurance that the Jet Group would honor the buy-back

13  feature; (c) payments to the Jet Group for its commitment to buy back the properties at

14  appraised value; (d) damages caused by cross-defendants' refusal to fund loan draws in

15  accordance with the loan agreements; (e) damages caused by cross-defendants' failure or

16  refusal to extend loans; (f) and other related payments and liabilities.

17  　　　　　　　　　　THIRD CAUSE OF ACTION

18  　　　　　　　　　　(Breach Of Contracts)

19  　　63. Cross-complainants incorporate by reference the allegations contained in

20  paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again

21  in this paragraph.

22  　　64. Since on or about January 1, 1999 and continuously through the present, cross-

23  defendants have breached the loan commitments to cross-complainants by failing to fund

24  development of cross-complainants' existing projects, and by refusing to fund additional

25  promised loans for other planned projects.

26  　　65. Cross-defendants further violated the covenant of good faith and fair dealing

27  implied by law in every agreement by acting or declining to act in such a way as to deprive

28  P:0146724.01:07495.002　　　　　　　　15

Exhibit B
Page 35

1   cross-complainants of the benefit of their bargains.

2   66. Cross-complainants have performed all obligations to cross-defendants except

3   those obligations cross-complainants were prevented or excused from performing.

4   67. Cross-complainants suffered damages caused by cross-defendants' breach of

5   contracts in the following respects:  (a) compensatory damages in an amount to be proven

6   at trial, together with interest thereon at the legal rate from date of breach until date of

7   recovery; (b) loss of profit on resale of properties; (c) and for costs of suit including

8   attorneys' fees.

9   FOURTH CAUSE OF ACTION

10   (Accounting)

11   68. Cross-complainants incorporate by reference the allegations contained in

12   paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again

13   in this paragraph.

14   69. As a result of cross-defendants' actions, cross-defendants have been unjustly

15   enriched at cross-complainants' expense.  The precise amount of the benefit retained by

16   cross-defendants as a result of their wrongful conduct is sufficiently uncertain as to require

17   an accounting in order to ascertain the exact damages due to cross-complainants.

18   FIFTH CAUSE OF ACTION

19   (Refund Of Unearned Commissions)

20   70. Cross-complainants incorporate by reference the allegations contained in

21   paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again

22   in this paragraph.

23   71. Olster and Apollo Mortgage acted as mortgage brokers in Arizona by

24   negotiating and obtaining the above loans on behalf of the cross-complainant entities as

25   borrowers, and Alev and BAM as guarantors.  Virtually all borrowers, and both guarantors

26   are residents of, or are incorporated in, Arizona.  Olster and Apollo Mortgage were

27   required to possess valid Arizona mortgage broker's licenses to conduct brokerage activities

28   P:0146724.01:07495.002

1  in that state, and were not permitted to receive broker's commissions arising out of such

2  brokerage activities within Arizona without holding a valid Arizona broker's license.

3      72. Cross-complainants paid to Olster and Apollo Mortgage broker commissions in

4  excess of $1,000,000.00 arising out of the unlicensed brokerage activities in Arizona.

5      73. Olster and Apollo Mortgage are obligated to refund the unearned, illegally

6  obtained commissions.

7  SIXTH CAUSE OF ACTION

8  (Usury)

9      74. Cross-complainants incorporate by reference the allegations contained in

10  paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again

11  in this paragraph.

12      75. Within the applicable limitation period(s), cross-complainants, pursuant to their

13  contracts with cross-defendants, have paid monies to cross-defendants, including

14  accumulated points and loan origination fees, in order to secure funding for cross-

15  complainants' projects. Cross-complainants further allege that InSouth and Southern

16  Financial purchased, took over and otherwise acquired such contracts from certain of the

17  cross-defendants.

18      76. The payment terms of the contracts are usurious and violate the usury laws of

19  California, Arizona and Tennessee, as well as federal law, which each prescribe limitations

20  on the lawful interest rate, and charges, fees and commissions, that may be imposed under

21  such contracts.

22      77. The payments made by cross-complainants were in excess of the maximum rate

23  of interest allowed by the usury laws of California, Arizona and Tennessee, as well as

24  federal law, and cross-complainants are entitled to recover double and treble the amount of

25  those payments.

26  / / /

27  / / /

28  P:0146724.01:07495.002

17

Exhibit B<br/>Page 37

SEVENTH CAUSE OF ACTION

(Violation Of Business

And Professions Code Section 17200 Et Seq.)

78. Cross-complainants incorporate by reference the allegations contained in paragraphs 1 through 40 above, as fully and to the same extent as if set forth at length again in this paragraph.

79. By virtue of cross-defendants' acts as alleged above, cross-defendants are engaged in unlawful and unfair trade practices. Cross-complainants, on their own behalf as well as on behalf of the general public, seek recovery from cross-defendants for violations of California Business & Professions Code section 17200 et seq.

80. By reason of the foregoing, cross-defendants have been improperly and unjustly enriched at the expense of cross-complainants and the public in an amount as yet unascertained, in a sum to be proven at the time of trial so that cross-defendants can make appropriate restitution.

81. Cross-complainants and the public are being irreparably harmed by cross-defendants' unfair trade practices and unfair competition. There is no adequate remedy at law, thereby justifying injunctive relief.

82. Cross-complainants further request an award of all attorney's fees and costs associated with the bringing of this action under California Business & Professions Code section 17200 et seq.

WHEREFORE, Cross-complainants pray for judgment against Cross-defendants as follows:

1. Damages in an amount to be proven at trial.

2. A mandatory injunction directing cross-defendants to resume funding the subject loans.

3. An injunction staying all efforts by cross-defendants to foreclose on the subject California properties pending trial in this matter.

Exhibit B
Page 38

1    4.     Punitive damages in an amount to punish cross-defendants and deter other

2  fraudulent and oppressive conduct.

3    5.     For the assessment of double and treble damages against cross-defendants.

4    6.     Interest according to proof.

5    7.     For an accounting from cross-defendants of all monies and other benefits due

6  cross-complainants.

7    8.     For restitution of all monies gained by cross-defendants as a result of their

8  unlawful acts.

9    9.     For reasonable attorneys' fees.

10    10.    For all other relief the Court finds proper.

11  DATED: May 9, 2000              SOLOMON WARD SEIDENWURM & SMITH, LLP

12

13                              By _____

14                                 NORMAN L. SMITH
                                   RICHARD E. MCCARTHY
15                                 KARL A. SANDOVAL
                                   Attorneys for Defendants and Cross-Complainants

16

17

18

19

20

21

22

23

24

25

26

27

28  P:0146724.01:07495.002                    19

## ASSIGNMENT OF RIGHTS AND COVENANT NOT TO EXECUTE

### I.     RECITALS

#### 1.     The Parties

The parties to this Assignment of Rights and Covenant not to Execute (hereinafter "Agreement") are Builders Financial Group, a Delaware Corporation, Bruce A. Olster, Madeline S. Olster, and Joseph E. Telese (collectively referred to hereinafter as "the BFG parties") on the one hand, and Benjamin A. Alev, Amnon Kawa, Draper Plaza, LLC, a Nevada limited liability company, AMKA Holdings, LLC, a Nevada limited liability company, BAM Investment, Inc., an Arizona corporation, ABA, LLC, a Nevada limited liability company, Benjamin A. Alev, Trustee of the KTB Irrevocable Trust, ALKA Enterprises, LLC, an Arizona limited liability company, Steele Canyon 2, LLC, an Arizona limited liability company, Steele Canyon 14, LLC, an Arizona limited liability company, Steele Canyon 33, LLC, an Arizona limited liability company, Dove Hollow, LLC, an Arizona limited liability company, 2903 Wishbone Way, LLC, an Arizona limited liability company and P.B.B., LLC, an Arizona limited liability company (collectively referred to hereinafter as "the Alev parties"), on the other hand.

#### 2.     The Underlying Litigation

The Alev parties are plaintiffs and the BFG parties are defendants in one case pending in the United States District Court for the Southern District of California entitled *Alev, et al. v. Apollo Funding Corp, et al.*, Case No. 99 CV 1527B (LAB) (hereinafter referred to as "the Federal Lawsuit"). The Alev parties are defendants/cross complainants and the BFG parties are cross-defendants in another case pending in the Superior Court of California, San Diego County entitled *Apollo Funding Corp. v. Alev, et al.*, Case No. GIC 732437 (hereinafter referred to as "the State Lawsuit"). The Federal Lawsuit and the State Lawsuit are referred to collectively hereinafter as "the Underlying Litigation").

#### 3.     Gulf's Bad Faith Conduct

The BFG parties tendered the defense of the Underlying Litigation to their insurer, Gulf Underwriters Insurance Company (hereinafter "Gulf") under Gulf Specialty Errors and Omissions Liability Insurance Policy number GUO406235 ("the Policy"). By letter dated October 12, 2000, Gulf agreed to defend BFG under a reservation of rights. The BFG parties contend that Gulf has refused to (a) fulfill or perform its obligation to provide a defense (b) pay or reimburse the BFG parties' attorneys' fees and costs of defense of the Underlying Litigation and (c) reasonably investigate and/or settle the Underlying Litigation.

Exhibit C

4.      The Coverage Litigation

On October 13, 2000, Gulf filed a lawsuit in the United States District Court for the Southern District of California entitled *Gulf Underwriters Insurance Company v. Builders Financial Group, et al.*, Case No. 00 CV 2054 IEG (NLS) (hereinafter referred to as "the Coverage Litigation"). The BFG parties filed a counter-claim against Gulf alleging breach of the insurance contract and bad faith. The BFG parties contend Gulf has engaged in further bad faith conduct since the counter-claim was filed.

Now therefore, for valuable consideration as set forth below, the parties agree as follows:

II.     AGREEMENT

A.      Assignment of Rights

The BFG parties hereby assign to the Alev parties, or their designee, to the fullest extent permitted by law, all of their rights, claims and/or causes of action they have, may have or may later acquire against Gulf, without limitation, based on Gulf's denial of defense and indemnification and the BFG parties' claim for payment or reimbursement of attorneys' fees and costs incurred in the defense of the Underlying Litigation.

B.      Dismissal of the Federal Lawsuit

The Alev parties will dismiss without prejudice all claims against the BFG parties in the Federal Lawsuit.

C.      Covenant not to Execute on Judgment

The Alev parties retain the right to proceed to trial in the State Lawsuit against one or more or all the BFG Parties. However, they agree to execute on any judgment they obtain in the State Lawsuit only against (a) Builders Financial Group up to the amount of $100,000 and (b) Gulf, without any monetary limitation. The Alev parties specifically covenant and agree not to execute on or otherwise pursue satisfaction of any judgment they may obtain in the State Lawsuit, or any judgment they may obtain in any existing or future litigation relating in any way to the claims asserted or which could have been asserted in the Underlying Litigation, against any assets of the BFG parties other than as set forth in this paragraph II.C. and the Policy.

### D.    Effective Date

This Agreement shall become effective only upon entry of judgment in favor of the Alev parties against the BFG parties and said effect shall be immediate and automatic upon such entry of judgment.

### E.    Prosecution of Claims Against Gulf

Immediately after this Agreement becomes effective, the Alev parties shall have the right to arrange for counsel of their choice to substitute for the BFG parties' existing counsel in the Coverage Litigation. Such counsel will represent the Alev parties as well as the BFG parties to the extent of their remaining claims which are not assignable. However, the Alev parties will have complete control, in their absolute discretion, of the conduct of the Coverage Litigation or any other litigation or proceeding against Gulf arising from this Agreement, and will have sole discretion to determine if, when, and for what amount, any settlement will be effected. The Alev parties will be solely responsible for all attorneys' fees, costs and expenses of the Coverage Litigation incurred after the Alev parties assume control of the litigation, as well as for payment of any adverse judgments or sanctions unless such sanctions are attributable to the conduct of the BFG parties. The BFG parties agree to pay all fees including attorneys' fees and costs incurred before the Alev parties assume control of the Coverage Litigation.

### F.    Settlement Percentages

In the event of a settlement of the Coverage Litigation, the Alev parties will be entitled to retain the first $600,000, and to be reimbursed for all of their attorneys' fees, costs and expenses before the BFG parties will participate in any settlement proceeds. Thereafter, the Alev parties will receive 80% of all additional settlement proceeds and the BFG parties will receive 20% of such additional proceeds.

### G.    Cooperation

The BFG parties and their counsel agree to cooperate as reasonably necessary in the prosecution of the Coverage Litigation, to testify in any action related to this Assignment, and further agree to execute any additional documentation reasonably required to establish or enforce the rights assigned. However, the Alev parties will pay all reasonable expenses of the BFG parties for travel, meals and hotel costs.

### H.    Representations and Warranties

The parties each represent they are fully authorized to enter this Agreement on their own behalf and on behalf of any entity for which they have signed. The BFG parties further warrant and represent to the Alev parties that (i) the BFG parties have

not previously assigned, transferred, purported to assign or transfer to any person, firm, corporation or entity, any rights assigned under this Agreement, or rights relating to the Underlying Litigation, the Coverage Litigation or the Policy nor has such assignment or transfer occurred as a consequence of law, or by operation of law, and (ii) the amount of attorneys' fees and costs incurred by the BFG parties since tender of defense of the Underlying Litigation exceeds $150,000 of which no amount has been paid or reimbursed to BFG or its counsel by Gulf.  The parties further represent they are represented by competent counsel, that they have made such investigation of the facts as they deem appropriate before entering into this Agreement, and that they are not relying on any statements, representations or warranties not contained herein.  Other than as set forth in this Agreement, the parties make no representations, express or implied, with respect to this Agreement.  Specifically, the BFG parties have not represented, and do not represent that, the Alev parties are likely to prevail, or will ultimately prevail, on any claims they may assert against Gulf.

I.    **Integrated Agreement**

This Agreement is the entire agreement between the parties, and supersedes any prior or contemporaneous agreements, whether written or oral.  This Agreement may be modified, changed or amended only by a writing fully executed by all of the parties hereto.

J.    **Applicable Law**

This Agreement was made and entered into in San Diego, California and shall be construed under the laws of the State of California.

K.    **Venue and Jurisdiction**

For purposes of venue and jurisdiction, this Agreement shall be deemed made and to be performed in the City of San Diego, California.

L.    **Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one document.

M.    **Attorneys' Fees**

In the event any litigation, arbitration, mediation, or other proceeding ("Proceeding") is initiated by any party(ies) against any other party(ies) to enforce, interpret or otherwise obtain judicial or quasi-judicial relief in connection with this Agreement, the prevailing party(ies) in such Proceeding shall be entitled to recover from the unsuccessful party(ies) all costs, expenses, actual attorneys' and expert witness

## J.   Applicable Law

This Agreement was made and entered into in San Diego, California and shall be construed under the laws of the State of California.

## K.   Venue and Jurisdiction

For purposes of venue and jurisdiction, this Agreement shall be deemed made and to be performed in the City of San Diego, California.

## L.   Counterparts

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one document.

## M.   Attorneys' Fees

In the event any litigation, arbitration, mediation, or other proceeding ("Proceeding") is initiated by any party(ies) against any other party(ies) to enforce, interpret or otherwise obtain judicial or quasi-judicial relief in connection with this Agreement, the prevailing party(ies) in such Proceeding shall be entitled to recover from the unsuccessful party(ies) all costs, expenses, actual attorneys' and expert witness fees, relating to or arising out of (a) such Proceeding (whether or not such Proceeding proceeds to judgment), and (b) any post-judgment or post-award proceeding including without limitation one to enforce any judgment or award resulting from any such Proceeding. Any such judgment or award shall contain a specific provision for the recovery of all such subsequently incurred costs, expenses, actual attorneys' and expert witness fees.

## N.   Ambiguities

This Agreement was drafted jointly by counsel for the parties hereto. Therefore, in the event of any ambiguity, it shall not be construed against any party as the drafter hereof.

DATED: _3-7-01_

BUILDERS FINANCIAL GROUP, a
Delaware Corporation

By: _____
Bruce Olster , its V. e President
[please print name & title]

DATED: _3-7-01_

_____
BRUCE A. OLSTER

DATED: _____

_____
MADELINE S. OLSTER

DATED: _____

_____
JOSEPH E. TELESE

Exhibit C
Page 44

J.     Applicable Law

This Agreement was made and entered into in San Diego, California and shall be construed under the laws of the State of California.

K.     Venue and Jurisdiction

For purposes of venue and jurisdiction, this Agreement shall be deemed made and to be performed in the City of San Diego, California.

L.     Counterparts

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one document.

M.     Attorneys' Fees

In the event any litigation, arbitration, mediation, or other proceeding ("Proceeding") is initiated by any party(ies) against any other party(ies) to enforce, interpret or otherwise obtain judicial or quasi-judicial relief in connection with this Agreement, the prevailing party(ies) in such Proceeding shall be entitled to recover from the unsuccessful party(ies) all costs, expenses, actual attorneys' and expert witness fees, relating to or arising out of (a) such Proceeding (whether or not such Proceeding proceeds to judgment), and (b) any post-judgment or post-award proceeding including without limitation one to enforce any judgment or award resulting from any such Proceeding. Any such judgment or award shall contain a specific provision for the recovery of all such subsequently incurred costs, expenses, actual attorneys' and expert witness fees.

N.     Ambiguities

This Agreement was drafted jointly by counsel for the parties hereto. Therefore, in the event of any ambiguity, it shall not be construed against any party as the drafter hereof.

DATED: _3-7-01_          BUILDERS FINANCIAL GROUP, a
                         Delaware Corporation

                         By: _____
                         Bruce Olster , its V.e Presidet
                         [please print name & title]

DATED: _3-7-01_          _____
                         BRUCE A. OLSTER

DATED: _3-8-01_          _____
                         MADELINE S. OLSTER

DATED: _____   _____
                         JOSEPH E. TELESE

Exhibit C

J.     Applicable Law

This Agreement was made and entered into in San Diego, California and shall be construed under the laws of the State of California.

K.     Venue and Jurisdiction

For purposes of venue and jurisdiction, this Agreement shall be deemed made and to be performed in the City of San Diego, California.

L.     Counterparts

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one document.

M.     Attorneys' Fees

In the event any litigation, arbitration, mediation, or other proceeding ("Proceeding") is initiated by any party(ies) against any other party(ies) to enforce, interpret or otherwise obtain judicial or quasi-judicial relief in connection with this Agreement, the prevailing party(ies) in such Proceeding shall be entitled to recover from the unsuccessful party(ies) all costs, expenses, actual attorneys' and expert witness fees, relating to or arising out of (a) such Proceeding (whether or not such Proceeding proceeds to judgment), and (b) any post-judgment or post-award proceeding including without limitation one to enforce any judgment or award resulting from any such Proceeding. Any such judgment or award shall contain a specific provision for the recovery of all such subsequently incurred costs, expenses, actual attorneys' and expert witness fees.

N.     Ambiguities

This Agreement was drafted jointly by counsel for the parties hereto. Therefore, in the event of any ambiguity, it shall not be construed against any party as the drafter hereof.

DATED: _3-7-01_____

BUILDERS FINANCIAL GROUP, a
Delaware Corporation

By: _____

Bruce Olster, its Vice President
[please print name & title]

DATED: _3-7-01_____

_____
BRUCE A. OLSTER

DATED: _3-8-01_____

_____
MADELINE S. OLSTER

DATED: _3-8-01_____

_____
JOSEPH E. TELESE

Exhibit C
Page 46

fees, relating to or arising out of (a) such Proceeding (whether or not such Proceeding proceeds to judgment), and (b) any post-judgment or post-award proceeding including without limitation one to enforce any judgment or award resulting from any such Proceeding.  Any such judgment or award shall contain a specific provision for the recovery of all such subsequently incurred costs, expenses, actual attorneys' and expert witness fees.

### N.   Ambiguities

This Agreement was drafted jointly by counsel for the parties hereto. Therefore, in the event of any ambiguity, it shall not be construed against any party as the drafter hereof.

DATED: _____        BUILDERS FINANCIAL GROUP, a
                                      Delaware Corporation

                                      By: _____
                                      _____, its
                                      [please print name & title]


DATED: _____

                                      _____
                                      BRUCE A. OLSTER


DATED: _____

                                      _____
                                      MADELINE S. OLSTER


DATED: _____

                                      _____
                                      JOSEPH E. TELESE

DATED:  3-12-01

                                      _____
                                      BENJAMIN A. ALEV

DATED:  3-12-01

                                      _____
                                      AMNON KAWA

DATED:  3-12-01

                                      DRAPER PLAZA, LLC, a Nevada limited
                                      liability company

                                      By: _____
                                      Benjamin A. Alev, its Member
                                      [please print name & title]

DATED: 3-12-01

AMKA HOLDINGS, LLC, a Nevada limited
liability company

By: _____

_____ its _member_
[please print name & title]

DATED: 3-12-01

BAM INVESTMENT, INC., an Arizona
Corporation

By: _____

Benjamin A. Alev its _____
[please print name & title]

DATED: 3-12-01

ABA, LLC, a Nevada limited liability
company

By: _____

Benjamin A. Alev its _____
[please print name & title]

DATED: 3-12-01

KTB IRREVOCABLE TRUST

By: _____

Benjamin A. Alev, Trustee

DATED: 3-12-01

ALKA ENTERPRISES, LLC, an Arizona
limited liability company

By: _____

Benjamin A. Alev its _____
[please print name & title]

DATED: 3-12-01

STEELE CANYON 2, LLC, an Arizona
limited liability company

By: _____

Benjamin A. Alev, its _____
[please print name & title]

DATED: ___3-12-01___

STEELE CANYON 14, LLC, an Arizona
limited liability company

By: _____
_Benjamin A. Alan_, its _member_
*[please print name & title]*

DATED: ___3-12-01___

STEELE CANYON 33, LLC, an Arizona
limited liability company

By: _____
_Benjamin A. Alan_, its _member_
*please print name & title]*

DATED: ___3-12-01___

DOVE HOLLOW, LLC, an Arizona limited
liability company

By: _____
_Benjamin A. Alan_, its _member_
*[please print name & title]*

DATED: ___3-12-01___

2903 WISHBONE WAY, LLC, an Arizona
limited liability company

By: _____
_Benjamin A. Alan_, its _member_
*[please print name & title]*

DATED: _____

P.B.B., LLC, an Arizona limited liability
company

By: _____
_____, its _____
*[please print name & title]*

DATED: ___3-12-01___

STEELE CANYON 14, LLC, an Arizona limited liability company

By: _____

_Benjamin A. Alu_, its _member_
*[please print name & title]*


DATED: ___3-12-01___

STEELE CANYON 33, LLC, an Arizona limited liability company

By: _____

_Benjamin A. Alu_, its _member_
*please print name & title]*


DATED: ___3-12-01___

DOVE HOLLOW, LLC, an Arizona limited liability company

By: _____

_Benjamin A. Alu_, its _member_
*[please print name & title]*


DATED: ___3-12-01___

2903 WISHBONE WAY, LLC, an Arizona limited liability company

By: _____

_____, its _____
*[please print name & title]*


DATED: ___3-12-01___

P.P.B., LLC, an Arizona limited liability company

By: _Bernard Bortnick_

_Bernard Bortnick_, its _Member_
*[please print name & title]*

Exhibit C
Page 50

F I L E D
STEPHEN THUNBERG
Clerk of the Superior Court

MAY 0 1 2001

By: D. LIM, Deputy

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| APOLLO FUNDING CORP., a Delaware corporation, | Case No.: GIC 732437 |
| Plaintiff, | [~~PROPOSED~~] JUDGMENT |
| v. | I/C Judge:   Hon. Charles R. Hayes |
| BENJAMIN A. ALEV, an individual; AMNON KAWA, an individual; DRAPER PLAZA, LLC,  a Nevada limited liability company; AMKA HOLDINGS, LLC, a Nevada limited liability company; BAM INVESTMENT, INC., an Arizona corporation; ABA, LLC, a Nevada limited liability company; BENJAMIN A. ALEV, TRUSTEE OF THE KTB IRREVOCABLE TRUST, ALKA ENTERPRISES, LLC, an Arizona limited liability company; STEELE CANYON 2, LLC, an Arizona limited liability company; STEELE CANYON 14, LLC, an Arizona limited liability company; STEELE CANYON 33, LLC, an Arizona limited liability company; DOVE HOLLOW, LLC, an Arizona limited liability company; and DOES 1 through 200, inclusive, | Dept.:      ·  66 |
| | Action Filed: July 9, 1999 |
| | Trial Date:   March 13, 2001 |
| Defendants. | |
| [Caption continued on next page] | |

P:0170927.01:07495.002

[PROPOSED] JUDGMENT

BENJAMIN A. ALEV, an individual;
DRAPER PLAZA, LLC, a Nevada limited
liability company; BAM INVESTMENT,
INC., an Arizona corporation; ABA, LLC, a
Nevada limited liability company;
BENJAMIN A. ALEV, TRUSTEE OF THE
KTB IRREVOCABLE TRUST; ALKA
ENTERPRISES, LLC, an Arizona limited
liability company; STEELE CANYON 2,
LLC, an Arizona limited liability company;
STEELE CANYON 14, LLC, an Arizona
limited liability company; STEELE
CANYON 33, LLC, an Arizona limited
liability company; DOVE HOLLOW, LLC,
an Arizona limited liability company, 2903
WISHBONE WAY, LLC, an Arizona limited
liability company; P.P.B., LLC, an Arizona
limited liability company,

                    Cross-complainants,

v.

APOLLO FUNDING CORP., a Delaware
corporation, BRUCE A. OLSTER, an
individual, APOLLO MORTGAGE &
FINANCIAL SERVICES, INC., a Florida
corporation, MADELINE OLSTER, an
individual, JOSEPH E. TELESE, an
individual, BUILDERS FINANCIAL
GROUP INCORPORATED, a Delaware
corporation, NATIONAL FUND
CONTROL, LLC, a Colorado corporation,
THE JET GROUP CORP., a Delaware
corporation, and ROES 1 through 200,
inclusive,

                    Cross-defendants.

This cause came on regularly for trial on March 13, 2001, in Department 66 of the

above-entitled court, the Honorable Charles R. Hayes, presiding.  All other parties and causes

of action having been dismissed, trial went forward exclusively with respect to cross-

complainants' cause of action for negligence against cross-defendants BUILDERS

FINANCIAL GROUP, INC., a Delaware corporation ("BFG"), BRUCE A. OLSTER,

MADELINE OLSTER, and JOSEPH E. TELESE.  Cross-complainants appeared by

Richard E. McCarthy and William McCurine, Jr., of Solomon Ward Seidenwurm & Smith.

P:0170927.01-07495.002                                          1

1  LLP.  Proof having been made to the satisfaction of the court that cross-defendants had been

2  fully advised of the time and place fixed for trial of this action and a jury trial having been

3  waived, the court heard the testimony and considered the evidence, both oral and

4  documentary, and the cause was argued and submitted for decision.  The court having caused

5  to be made and filed herein its written Statement of Decision,

6       Accordingly, IT IS ORDERED, ADJUDGED, AND DECREED that judgment be

7  entered in favor of cross-complainants for negligence against cross-defendants BUILDERS

8  FINANCIAL GROUP, INC., BRUCE A. OLSTER, MADELINE OLSTER, and

9  JOSEPH E. TELESE, jointly and severally, in the sum of $20,241,012.00, with interest thereon

10  at the rate of 10% per annum from the date of judgment until paid, together with costs and

11  disbursements in the sum of $_____.

12  Dated: ___MAY 0 1 2001___         CHARLES R. HAYES

13                          Honorable Charles R. Hayes
                        Judge of the Superior Court

14       Judgment entered on _____, 2001, in Volume ____ of the Judgment Book, Page __.

15  Dated: _____

16                          Clerk

17                        By:_____
                        Deputy

18

19

20

21

22

23

24

25

26

27                                                      Exhibit D
                                                      Page 53

*Apollo Funding Corp. v. Alev, et al.*
San Diego County Superior Court Case No. GIC 732437

F I L E D
STEPHEN THUNEERG
Clerk of the Superior Court

MAY 0 1 2001

By: D. LIM, Deputy

## PROOF OF SERVICE BY MAIL

I, the undersigned, declare:

I am over the age of 18 years and not a party to this action. I am employed in the county of San Diego. My business address is 401 B Street, Suite 1200, San Diego, California 92101. I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.

The document(s) entitled **[PROPOSED] JUDGMENT** will be deposited with the United States Postal Service at 401 B Street, San Diego, California, on March 26, 2001 in the ordinary course of business, by placing a copy thereof in a separate envelope for each addressee named hereafter, with postage thereon fully prepaid, sealed, and addressed as follows:

Bruce Olster
734 Pinellas Bayway
Tierra Verde, FL 33715
Tel: (727) 538-0044
Fax:
Cross-Defendant in Pro Per

Madeline Olster
734 Pinellas Bayway
Tierra Verde, FL 33715
Tel: (727) 538-0044
Fax:
Cross-Defendant in Pro Per

Joseph E. Telese
734 Pinellas Bayway
Tierra Verde, FL 33715
Tel: (727) 538-0044
Fax:
Cross-Defendant in Pro Per

Builders Financial Group, Incorporated
734 Pinellas Bayway
Tierra Verde, FL 33715
Tel: (727) 538-0044
Fax:
Cross-Defendant in Pro Per

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed March 26, 2001 at San Diego, California.

Pamela Powell

P-0171364-01-07495.002

| | |
|---|---|
| 1 | WILLIAM MCCURINE          [State Bar 66773]<br>RICHARD E. MCCARTHY      [State Bar 106050] |
| 2 | KARL A. SANDOVAL          [State Bar 170190]<br>SOLOMON WARD SEIDENWURM & SMITH, LLP |
| 3 | 401 B Street, Suite 1200<br>San Diego, CA 92101 |
| 4 | Telephone:    (619) 231-0303<br>Facsimile:     (619) 231-4755 |
| 5 | |
| 6 | |
| 7 | |
| 8 | IN THE UNITED STATES DISTRICT COURT |
| 9 | SOUTHERN DIVISION |
| 10 | |

| | | |
|---|---|---|
| 11 | GULF UNDERWRITERS INSURANCE<br>COMPANY, a Missouri Corporation, | Case No.:  00 CV 2054 IEG (LAB) |
| 12 | Plaintiff, | PROOF OF SERVICE |
| 13 | | |
| 14 | vs. | |
| 15 | BUILDERS FINANCIAL GROUP, a<br>Delaware Corporation; BRUCE A. OLSTER,<br>an individual; MADELINE S. OLSTER, an | |
| 16 | individual; JOSEPH E. TELESE, an individual;<br>and DOES 1 through 20, inclusive, | |
| 17 | | |
| 18 | Defendants. | |
| 19 | BUILDERS FINANCIAL GROUP, a<br>Delaware Corporation; BRUCE A. OLSTER, | |
| 20 | an individual; MADELINE S. OLSTER, an<br>individual | |
| 21 | | |
| 22 | Counter-Claimants, | |
| 23 | vs. | |
| 24 | GULF UNDERWRITERS INSURANCE<br>COMPANY, a Missouri Corporation, | |
| 25 | Counter-Defendant | |
| 26 | | |
| 27 | //// | |
| 28 | //// | |

P:0173911.01:07495.005

1    I, the undersigned, am employed in the City of San Diego, State of California. I am

2    over the age of 18 years and I am not a party to the within action. My business address is

3    401 B Street, Suite 1200, San Diego, California 92101. On May 29, 2001, I served the

4    document(s): **STIPULATION ALLOWING COUNTER-CLAIMANTS TO FILE FIRST**

5    **AMENDED COUNTER-CLAIM AND ORDER THEREON** on the party(ies) in this action as

6    follows:

7    **James J. S. Holmes, Esq.**
     **SEDGWICK DETERT MORAN & ARNOLD**
8    **801 South Figueroa Street, 18th floor**
     **Los Angeles, CA 90017-5556**
9    **Tel. (213) 426-6900**
     **Fax (213) 426-6921**
10   **Attorneys for Gulf Underwriters Insurance**
     **Company**

11

12

13   __XX____    **(BY MAIL)** I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at San Diego, California. I am readily familiar with the practice of Solomon Ward Seidenwurm & Smith, LLP, for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service, the same day as it is placed for collection. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

14

15

16

17

18   _____      **(BY PERSONAL SERVICE)** I delivered to an authorized courier or driver authorized by Central Attorney Service to receive documents to be delivered on the same date. A proof of service signed by the authorized courier will be filed forthwith.

19

20

21

22

23

24

25

26

27

28